### SCHIEFFELIN *vs.* CARPENTER and others.

A *parol agreement* between a landlord and a tenant of a term for 6 years, that the tenant shall surrender his interest in the demised premises, and that the landlord shall execute a new lease for 8 years to third persons, does not operate as a *surrender by operation of law*—unless such new lease be executed and pass an interest according to the contract and intention of the parties—although the tenant quits the premises, the third persons enter, remain in possession for the space of a year, and pay rent to the landlord; and consequently, the original lease remains in force, and the landlord may maintain an action upon the covenant in it for the payment of rent against the original tenant for rent subsequently accrued.

Where a tenant covenants to *keep the premises in repair* during the term, and at the expiration thereof yield them up in like condition, and he permits them to go to decay and omits to make necessary repairs, the landlord may bring his action forthwith, and is not bound to wait until the expiration of the term; if the covenant was merely to leave the premises in good repair, it would be otherwise.

THIS was an action of *covenant*, tried at the New York circuit in April, 1834, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff declared on a lease under seal, made by him to Edmund T. Carpenter, bearing date 1st April, 1829, demising a dwelling house and lot of ground of 5½ acres, situate in the twelfth ward of the city of New York, for the term of *six years*, subject to an *annual rent* of $325, to be paid quarterly. The lease was a tripartite indenture, *Daniel S. Hawkhurst* and *Daniel Carpenter* being parties thereto, and uniting with the tenant in the covenants to be performed on his part; and they were joined as defendants in the suit with the tenant. The defendants, amongst other things, *covenanted* for the payment of the rent; that the tenant should, *during the term*, keep the dwelling house, fences and every part of the demised premises in good condition and repair, and, at the expiration of the term, yield them up in like good repair; that he would not remove, injure or destroy any root, plant, bush or tree growing on the premises, or suffer the same to be done; that he would not underlet or assign the premises, ei-

NEW-YORK,
May, 1836.

Schieffelin
v.
Carpenter

ther directly or by operation of law, without the written consent of the landlord ; and that during the term, the dwelling house should not be occupied as a public house, inn or tavern, without the like written consent. The plaintiff *assigned*, as *breaches* of the covenants: 1. That on the 1st July, 1833, there was one year's rent in arrear and unpaid ; 2. That on the 1st *January*, 1831, the tenant permitted the dwelling house and fences, &c. to fall into bad condition, and to become ruinous and to decay for the want of necessary repairs, and so permitted them to remain until the commencement of the suit ; 3. That on the 1st January, 1831, he suffered fruit trees, gooseberry bushes, asparagus roots, and ornamental flowering plants growing on the premises to be lopped, uprooted, removed and destroyed by persons and animals ; 4. That from 1st November, 1832, until 1st June, 1833, the dwelling house was used and occupied as a *public house*, without the consent of the plaintiff. The defendants pleaded the *general issue*, and gave notice of various matters to be proved on the trial.

On the trial of the cause, the plaintiff claimed to recover the *rent* of a quarter of a year, ending 1st July, 1833, and *damages* for breaches of the covenants to keep the premises in repair, and not to injure them, &c. The plaintiff proved that the premises were in good repair at the date of the lease, and when the tenant went into possession ; and that in February, 1833, the dwelling house was in a ruinous state, the fences prostrated, and the garden wholly destroyed, and that the expense of putting the premises in repair would be between $400 and $500. He also proved that the premises had been occupied for a year by two men of the name of *Wood* and *Matthews*, who were rail-road contractors, and had many persons in their employ who resided on the premises. The defendant *offered to prove* that the plaintiff held the demised premises only *in right of his wife*, and insisted that inasmuch as an action of *waste* might be brought in the name of the *husband and wife* in the character of *reversioners*, the claim of damages for injury to the demised premises ought not to be sustained in the present suit : the evidence was rejected by the judge. The defendants also *offered to prove* that in the

NEW-YORK,
May, 1836.

Schieffelin
v
Carpenter.

autumn of 1831, an agreement was entered into between the plaintiff, the defendant Edmund T. Carpenter and two persons of the names of *Mills* and *Owen*, that Carpenter should quit and surrender up the premises to the plaintiff, that the lease declared on should be delivered up and cancelled, and a new lease of the premises should be executed by the plaintiff to *Mills* and *Owens* for the term of 8 or 10 years. That in pursuance of such agreement, Carpenter, in the autumn of 1831, surrendered up the premises to the plaintiff, and paid all the rent then due to the plaintiff, and *Mills* and *Owen* took possession of the premises and occupied the same pursuant to such agreement as tenants to the plaintiff, who accepted them as such, and received rent from them. That *Mills* and *Owen* occupied the premises until the autumn of 1832, when they left, and were succeeded in the possession by *Wood* and *Matthews,* to whom also the premises were let by the plaintiff, and from whom he also received rent; these facts the defendant offered to establish by *parol proof.* The counsel for the plaintiff objected that parol evidence of the alleged agreement or *surrender* of the lease was inadmissible; and also that the evidence, if intended to be urged in discharge of the covenants, ought not to be received, for the reason that a covenant cannot be discharged by parol *before* breach. The judge sustained the objection. The defendants then proved that *Mills* and *Owen* went into possession of the premises on the 1st November, 1831, and that previous to their entry, Edmund T. Carpenter (the tenant) put the premises in as good repair as they were in when he entered; they were thus repaired, because *Mills* and *Owen* were to take possession. The plaintiff, on being spoken to on the subject, said that he was satisfied with the repairs, if *Mills* and *Owen* were satisfied. It was also proved, that after Mills and Owen quit the premises, they were occupied by *Wood* and *Matthews,* who had a large number of men in their employment as laborers on a rail-road and housed on the premises. Wood and Matthews were in possession six months, and paid rent to the plaintiff.

The counsel for the defendants insisted that the plaintiff was not entitled to recover in this action more that *nominal damages* for the breach of the covenant to keep the premises in repair, and for the injury done to the premises, as the tenant might put the premises in complete repair before the end of the term, and if he did so the plaintiff would have no cause of complaint ; if he did not do so, then the plaintiff would be entitled to bring his action, and to recover damages, and requested the judge so to charge the jury. The judge declined to do so, and, on the contrary, charged the jury that the plaintiff was entitled to his verdict, for one quarter's rent, (which was admitted to be all that was due at the bringing of the suit ; ) and, further, that they were not bound to limit their verdict on the covenant of repairs to *nominal damages* but might give such sum as, under all the circumstances, they should consider the plaintiff entitled to recover, provided they were satisfied that the defendants had violated their covenants. The jury found a verdict for the plaintiff with $481,25 damages. The defendants ask for a new trial. The cause was submitted on written arguments.

*E. Morrill & S. Sherwood*, for the defendants, presented the following points : 1. That the evidence offered on the trial, if received, would have proved a *surrender* of the premises by *operation of law* ; 2. That no right of action had accrued to the plaintiff by the tenant's permitting the buildings and fences to go to decay, nor for the injury done to the premises, as the term was not ended, the tenant might make repairs before the expiration of his term, and yield up the premises in good condition according to the terms of his covenant; 3 *Hawkhurst* and *D. Carpenter* being *sureties* for the faithful performance of the covenants of Edmund T. Carpenter the tenant, and the terms of the contract to which they were sureties having been altered by the agreement between the landlord and the tenant and *Mills* and *Owen,* and the latter persons having taken possession of the demised premises, the sureties are discharged, and an action cannot be maintained against them ; and 4. That an action for an injury to the freehold lying in the name of the *reversioner,* the evidence

*Margin:*

NEW-YORK,
May, 1836.

Schieffelin
v.
Carpenter.

offered that the plaintiff held the premises only *in right of his wife*, ought to have been received, as it would have shown that the action should have been in the joint names of husband and wife, and consequently that the suit in the name of the husband alone could not. be sustained.

*C. O' Connor*, for the plaintiff, presented the following points: 1. A lease required by the statute of frauds to be in *writing*, cannot be surrendered except by writing; 2. A covenant cannot be varied by parol, or discharged *before* breach by a parol agreement, even though such agreement be based upon a sufficient consideration ; 3. The parol evidence of an assent by the plaintiff to the under-letting or assignment was inadmissible. The plaintiff had by the express terms of the lease, protected himself in this respect. No tenant was to be deemed in with his assent, unless that assent was given in writing. This was a statute of frauds made for this particular case by the parties themselves, and such a provision is valid, having always been sanctioned by the courts when brought under review ; 4. The defendant's third point is untenable, even supposing a valid assignment to *Mills* and *Owen* by reason of the alleged verbal assent of the landlord. The defendant's covenant is for the faithful performance, not only of the tenant, but of his *assigns*. Besides, by showing that the condition of the principal has not been changed—that he remains liable, notwithstanding the parol surrender—the obligation of the sureties continues ; 5. The defendants are estopped by accepting the lease from disputing the title of the plaintiff ; and 6. The rule of damages as laid down by the circuit judge was correct.

*By the Court*, NELSON, J. This case has been elaborately argued upon paper by the respective counsel, and all the authorities and principles bearing upon the points disputed, have been referred to and examined ; and were it not for some recent cases in the English courts, that are very confidently urged by the defendant's counsel, it seems to me there would be but little difficulty in disposing of the case. A surrender is defined to be a yielding up of an estate for life or years to him who hath the immediate estate in reversion or remain-

der, wherein the estate for life or years may drown by mutual agreement. *Comyn's Landlord & Tenant*,337. 2 *Co.Litt.* 551. 4 *Cruise*, 155. 4 *Bacon's Abr.* 209. *Shep. Touch.* 300, 307. Before the statute of frauds and perjuries, any form of words without writing, whereby an intention appeared to surrender up the possession of the premises to the lessor or reversioner, was sufficient for that purpose. This was called a surrender in *fact*. There was also a surrender in *law*. It was effected by the acceptance of a new lease of the premises from the lessor, for the whole or a part of the time embraced in the former one, because it necessarily implied a determination and surrender of that lease ; otherwise the lessor would be unable to make the second, or the lessee to enjoy it, and it was therefore but reasonable to presume both parties intended to waive and relinquish the benefit of the first one. The second lease before the statute referred to, of course need not have been in writing to operate an effectual surrender of the first one. The statute of 29 *Car.* enacted " that all leases, estates, interests of freehold or terms of years, or any uncertain interests of, in, to or out of any lands, &c. *made* or *created* by livery and seizin only, or by parol, and not put in writing, &c. shall have the force and effect of leases or estates at will only," &c. excepting leases not exceeding the term of three years from the making thereof. And also, " no leases, estates or interest either of freehold or term of years, or any uncertain interest, &c. of, in, to or out of any messuages, &c. shall be assigned, *granted or surrendered,* unless by deed or note, in writing, or *operation of law.*" Our statute (2 *R. S.* 134, §6 ) provides that " no estate or interest in lands, other than leases for a term not exceeding one year, &c. shall hereafter be created, granted, assigned, *surrendered,* &c.unless *by act or operation of law,*or by deed or conveyance in writing."&c.§8. " Every contract for the leasing for a longer period than one year, &c. shall be void," unless in writing. Since these statutes, a parol lease in England for more than three years, and in this state for more than one, is entirely void ; though if the tenant enters into possession, he shall be deemed a tenant at will, and for the purpose of notice to quit, from year to year, and notwithstanding the lease be

NEW-YORK,
May, 1836.

Schieffelin
v.
Carpenter.

void, it may regulate the terms of holding as to rent, time to quit, &c.  5 *T. R.* 471.  *Comyn's L. & T.* 8.  *Woodf.* 14, 15.  4 *Cow.* 350.  7 *id.* 751.  But as a lease for the purposes for which it was given, it is considered wholly void.  It is, however, conclusively settled by authority, that the second lease must be a valid one, so as to convey, the interest it professes to convey, to the lessee, and also to bind him to the performance of the covenant or agreement in favor of the lessor, in order to operate as an effectual surrender of the first one.  3 *Burr.* 1807.  4 *id.* 1980, 2210.  6 *East,* 86.  *Comyn's Dig. tit. Estate,* G. 13.  4 *Bac. Abr.* 215.  Without this, the reason before given for the *implied surrender* would fail, and the intent of the parties be altogether defeated.  Instead of being but a surrender of the first lease, it would be a surrender of the whole estate and interest in the premises, and a virtual determination of the existence of any tenancy.  Now the ground upon which the surrender in this case is mainly argued is, not that a new lease was given to the original lessee, but that it was given to *Mills* and *Owen* with his consent, for the period of eight or ten years.  Assuming this, amounts to the same as if given to Carpenter ; it is impossible *to maintain that any valid lease has been proved in the case,* or any lease whatever for a definite period.  The most that was offered to be proved was, that *Mills* and *Owen* went into possession with the consent of the defendants, under a parol agreement for a lease for eight or ten years ; and if it be viewed as an agreement for a lease, or as a virtual lease for that time, it is void under the statute, and could not be enforced by either of the parties.  An implied tenancy at will only was created, which enabled *Mills* and *Owen* to hold from year to year, for the purpose of notice to quit, but which they could terminate at any moment they pleased.  The agreement and entry in pursuance of it conferred no rights upon the plaintiff, further than to recover his rent while they continued to occupy, and perhaps a quarter's rent, if they abandoned the occupation after the commencement of a quarter and before its termination.

Suppose this agreement had been made with the original tenant, and the defendants can claim no more from it as of-

NEW-YORK,
May, 1836.

Schieffelin
v.
Carpenter.

fered to be proved, could it be contended that it operated as a virtual surrender of the lease for six years, and that the plaintiff could dispossess the tenant on giving six months notice to quit? This would be the consequence of the doctrine urged in the defence. The tenant would become a mere tenant at will. The authorities already referred to clearly establish that the second lease, to have the effect claimed, must pass the interest in the premises according to the contract, or in other words, carry into legal effect the intent of the parties executing it. 3 *Burr.* 1807. 4 *id.* 1980, 2210. *Comyn's Dig. tit. Estate,* 9, 12. 6 *East,* 661. 6 *Wendell,* 569. 1 *Saund.* 236, *b. n.* It is stated by Baron Gilbert, 4 *Bacon's Abr.* 210, that since the statute of frauds the new lease must be in writing in order to operate as an implied surrender of the old one, for it is then of equal notoriety with a surrender in writing. This position is also adopted by Serjeant Williams, in his notes upon the case of *Thursby* v. *Plant,* 1 *Saund.* 236, *n. b.* But as surrenders by operation of law are expressly excepted out of the statute, as a necessary consequence they are left as at common law; and there it is clear it need not be in writing to have the effect to surrender the old one, even if by deed. 2 *Starkie's Ev.* 342. 20 *Viner,* 143, *L.* pl. 1, *n.* 1 *Saunders,* 236, *n. c.* I am inclined therefore to think that a valid parol lease, since the statute, might produce a surrender in law within the reason and principle upon which this doctrine is founded. The true rule seems to be that laid down by Mr. Starkie, 2 *Starkie's Ev.* 342, as follows: the taking a new lease by parol is by operation of law a surrender of the old one, although it be by deed, provided it be a good one, and pass an interest according to the contract and intention of the parties; for otherwise the acceptance of it is no implied surrender of the old one.

If the first lease in this case has not been surrendered, then there is no ground of defence against the action upon the express covenants contained in it, even if we should concede a legal assignment from the tenant to Mills and Owen, and the acceptance of them expressly or impliedly by the plaintiff. 4 *T. R.* 98, 100. 1 *Saund.* 241, *n.* 5. *Woodf.* 278. *Cro. Car.*

NEW-YORK,
May, 1836.

Schieffelin
v.
Carpenter.

188. *Comyn's Land.& Tenant*, 275, *and cases there cited.* But the plaintiff stipulated against assignment or under-letting unless permission was given in writing, and a parol license is therefore inoperative.  2 *T. R.* 425.  3 *id.* 590.  3 *Madd.* 218.  *Platt on Cov.* 427.  This clause in a lease would be nugatory, if courts should allow parol evidence to control in the matter.  Besides a parol *assignment* is void under the statute of frauds.  The case of *Thomas* v. *Cook*, 2 *Starkie's R.* 408, is supposed to have a strong bearing upon this one.  In that case there was a *parol lease* from *year to year* to Cook, who under-let to Parkes.  The rent being in arrear, Thomas' distrained upon him, and he paid it by a bill of exchange ; on receiving which he declared he would have nothing more to do with Cook.  Afterwards, however, he brought his action against him for rent then due.  For the plaintiff it was insisted that there was no surrender within the statute of frauds.  Abbott, C. J., left it to the jury to say, whether the plaintiff had not accepted Parkes as his tenant, with the assent of Cook; and the jury finding in the affirmative, the plaintiff was nonsuited.  The court at the ensuing term, when the case was moved, were of opinion there was a surrender by operation of law.  They say if a lessee assign and the lessor accept the assignee of the lessee as his tenant, *that* in point of law puts an end to the priority of estate, and an action of debt cannot be brought to recover the rent.  That I admit to be true, but if the lease had been in writing, according to the cases above cited, a suit might still be maintained upon the *express covenant in it*, though the privity of estate was gone.  Besides, the assignment was void as such under the statute of frauds.  1 *Campb.* 318.  5 *Bing.* 25.  *Comyn's Land. & Ten.* 55, *and cases there cited.  Woodf.* 277.  Again, the court say it is a rule of law, that the acceptance of a subsequent lease by parol operates as a surrender of a former lease by deed.  That is true under the circumstances we have before endeavored to explain, and is undoubtedly the legal ground upon which that case may be maintained.  The case sufficiently shows that the implied parol demise to Parkes was a valid one to the extent intended by both parties ; the one to Cook was a lease

from year to year, and the acceptance of Parkes, as tenant in his place, impliedly gave him the same tenure and term ; no writing was necessary for that purpose. This is the ground upon which the case is said to stand by the court, in commenting upon it in a subsequent term. 4 *Barn. & Cres.* 922.

In the case of *Grimman* v. *Legge*, 8 *Barn. & Cres.* 324, the lease was by parol for *one year*, for the first and second floor of a house ; a dispute having arisen before the end of the year, the tenant said she would quit. The landlord said he would be glad to get rid of her. She accordingly left the premises, and possession was taken by him. The facts were submitted to the jury, to presume a rescindment of the original contract between the parties. The case of *Stone* v. *Whiting*, 2 *Starkie*, 235, is precisely like the case of *Thomas* v. *Cook*, and stands upon the same principle. In the case of *Whitehead* v. *Clifford*, 5 *Taunt*, 518, the lease was by parol from year to year, and stands upon the footing of *Grimman* v. *Legge*. In the case of *Hammerlin* v. *Stead*, 3 *Barn. & Cres.* 478, a tenant from *year to year* entered into an agreement in writing for a lease to him and another, and from that time both occupied. It was held that the new agreement, coupled with the joint occupation, determined the former tenancy, and operated as a surrender in law, though the lease contracted for was never granted. If the new agreement and occupation were viewed as a tenancy from year to year, which was of equal tenure with the first lease, there was at least no hardship in this decision. The judges obviously were somewhat embarrassed in their endeavors to place the case upon principle, and some of their observations conflict with the case in 6 *East*, 86, which they admitted to be good law. The first case was by parol from year to year, and might well have been put upon the footing of the cases to which I have referred, where the facts were submitted to the jury to find the first contract rescinded.

The law seems to be well settled, that under a *covenant to repair* like the one in question, the landlord need not wait till the expiration of the term before bringing an action for the breach, under an idea that the tenant may, before he leaves the premises, put them in good condition. 1 *Barn. & Ald.*

584. 2 *Ld. Raym.* 803, 1125. 1 *Salk.* 141. *Platt on Cov.* 289. *Comyn's Land. & Ten.* 210. If the covenant was only to leave the premises in as good a condition as the tenant found them, it seems an action would not lie till the end of the term. *Shep. Touch.* 173. *Platt on Cov.* 289.

The defendant cannot question, in this action, the title of the landlord. The action is upon an express covenant between the parties, and the suit, if sustained at all, must be by the plaintiff alone.

New trial denied.