By the Court. Bosworth, J.
The important question in this case is, did the judge before whom it was tried correctly decide “ that no evidence had been given on the part of the defendant, sufficient to go to the jury on the question of a surrender of the lease in question?”
If it was agreed absolutely and unconditionally between the plaintiff, defendant, and Mandlebaum, that plaintiff would accept the latter as his tenant in lieu of the defendant for the residue of the term, and take payment of the rent monthly in advance, instead of quarterly, at the rate of $70ff p<fer annum, and if this agreement was executed by the defendSnt’s yielding possession to Mandlebaum, and by the latter taking possession and paying rent monthly in advance to the plaintiff, and by the plaintiff’s accepting it from him as such substituted tenant *271 under and pursuant to such agreement, such agreement and acts of the parties under it, would amount to a surrender of the lease by “operation of law.” (1 Sand. S. C. R. 5. Bailey v. Delaplaine, 1 Law & Eq. E. 374; Smith & Coles v. Lovell.)
It is necessary, in order that the new agreement may be effectual to work a surrender by operation of law, that it be valid and sufficient to vest in the new tenant or lessee the estate or term contemplated by the agreement of the parties, and bind him to pay the stipulated rent. (Schiefflin v. Carpenter, 15 Wend. 400; Smith v. Niver & Rockfeller, 2 Barb. S. C. 180. Doe ex dem. v. Courtenay, 11 Ad. & El. N. S. 702; Doe ex dem. v. Poole, id. 713.)
A lease to Mandlebaum for six months, the balance of the term, would be valid though made by parol.
In Doe ex dem. Biddulph v. Poole—Eble, J., in delivering the opinion of the court, says, “ that an express surrender may be on condition either precedent or subsequent, is clear upon the authorities, as if it be with reservation of rent, and conditioned to be void if the rent be not paid.” (Shep. Touchst. 307.) A condition annexed to a surrender, may revest the particular estate, because the surrender is conditional.” (Co. Lit. 218 b.)
“ This being so as to express surrenders, we can discover no reason why an implied surrender may not also be taken' to be conditioned to be void on a given event. As the surrender is by implication only, it is equally open to imply a conditional of absolute surrender; and, where the implication of a conditional surrender prevents injustice and gives effect to the real intention of the parties, the true spirit of the law requires that implication to be made, and forbids an implication leading to the contrary consequences.”
Was there such evidence, as made it the duty of the judge presiding at the trial, to have submitted to the jury the question, whether the plaintiff rented the premises to Mandlebaum for the last six months of the term, and whether the latter entered and occupied- under such letting and paid rent as such tenant to the plaintiff ?
The only evidence, if any, which made it incumbent to submit that question, was given by Mandlebaum, who was ex *272 amined de bene esse, through an interpreter. The fact that it was necessary in examining him to have the aid of an interpreter, shows that no great reliance can be placed on his capacity to understand and repeat accurately what was said, when he and the defendant and the plaintiff held the conversation, in which it is claimed the new parol lease was made to the witness. From his testimony it appears that he bought or contracted to buy of Meyers his interest in the unexpired term of the lease before the two went to see the plaintiff on the subject. The lease contained a consent, that the defendant “ would not assign, let, or underlet the whole of the said premises, without the written covenant of the party of the first part, under the penalty of forfeiture and damages.”
It was therefore necessary to obtain the consent of the plaintiff to the sale made, or contracted to be made, of the lease from the defendant to Mandlebaum. The following questions were put and answers made thereto on his direct examination, viz:— Q. What took place when you hired the premises of the plaintiff Mr. Whitney ? (fol. 35.)
A. He (meaning the witness) bought the place out from Mr. Meyers, and then Mr. Meyers went with me to Mr. Whitney 5 he, Meyers, asked Whitney if he was satified that Meyers should sell the premises out to witness. Mr. Meyers told me I had to pay the rent, fifty-eight dollars and some cents. I paid it, and Mr. Whitney gave me a receipt in my name.
Q. State all that Meyers said to Whitney when you were there to take the premises, and all that Mr. Whitney said. (Objected to as leading.)
A. I went there with Mr. Meyers and my brother, David Mandlebaum, went to the office of Mr. Whitney. Mr. Meyers said there is a man who wants to buy my house out, as I am going to Europe. Mr. Whitney asked him what, man I be; Mr. Meyers said, I (witness) would pay the rent. Mr. Whitney said he was satisfied if I’d pay the rent.
Mr. Meyers had the lease in his hand, and told Whitney he had to put my (witness’s) name in the lease. Mr. Whitney said it was no use to put his name in it, it was good enough if witness paid the rent to the first of May, and got a receipt in his name. (fol. 3,9,)
*273 This is the whole conversation at the time the new parol lease is claimed to have been made, to which the witness testified on his direct examination.
According to this not a word was said about letting the premises to Mandlebaum, but the point of inquiry was, whether Mi*. Whitney would consent that the defendant should sell out to him ?
The cross and re-examination of the witness do not substantially vary his statement of the actual conversation had between him and the plaintiff and the defendant.
The following questions, and answers thereto, occur in the testimony of the witness, but not in the order here stated:—
Q. How did you engage to pay the rent to Whitney ?
A. By the month, and in advance.
Q. Did you so pay it ?
A. I did.
Q. Were you to pay the rent in the same manner that Mr. Meyers did—according to the lease ?
A. There was nothing said about how I should pay the rent (f. 53).
Q. Where did you first go to see Mr. Whitney about the premises, and when ; give the day and month of the year. (£46)?
A. Two years ago, in December, 1849, at his office.
Q. In what month did you take possession of the premises (£58)?
A. In November, 1849, for the last six months before the first of May, 1850.
Q. How much rent have you paid Whitney in all (f. 71) ?
A. Three months—$175.
Q. Did you pay any rent on the first of February, 1850, for the quarter commencing on that day ?
A. I paid only for three months.
It is evident that there is no evidence thus far of a parol demise of the premises by Whitney to Mandlebaum, for six months from Nov. 1, 1849, or for any other period.
The witness testifies that he paid, during three months, rent to Mr. Whitney monthly, in advance, or- $58 33-J- per month, and took receipts for the rent so paid, Parol evidence of the *274 contents of the receipts was excluded by the judge, and we think the decision correct, as the non-production of the receipts was not satisfactorily explained.
Whether the receipts by their terms stated the rent to have been paid by Mandlebaum, as a tenant of Whitney, or on behalf of the defendant, did not therefore appear. The non-production of the receipts would not justify any inference or presumption that their terms were adverse to the plaintiff’s claim.
Confessedly, there has been only nine months’ rent paid in all, including the three months’ rent paid by Mandlebaum.
The complaint avers that “the defendant paid the three quarters’ rent, which fell due on the first days of May, August, and November, respectively in said term, but has not paid the quarter’s rent falling due the first of February, 1850.”
The answer admits that the defendant “ has fully paid three quarters of the rent of said premises, due and owing by him to the said plaintiff for the occupation thereof.”
This seems to be an express and unqualified admission, that all the rent that has in fact been paid, has been paid by the defendant, and that the occupation to the first of February was his occupation, and that all the moneys paid were due and owing from him for such occupation.
The answer then sets up a surrender of the lease before the accruing of the rent falling due on the first of February, 1850, that the defendant gave'up possession of the premises to the plaintiff, and with his assent, but not stating when this was done. It then alleges that on or about the first of February, 1850, the plaintiff let and rented the premises to one David Mandlebaum, to Joel Mandlebaum, or to one of them, and that on such renting they, or one of them, paid him the rent agreed on between them for the use and occupation, and that thereupon they, or one of them, entered into possession of said premises as tenants to the plaintiffs. This answer is signed and verified by Meyers.
If there was any parol demise of the premises to Joel Mandlebaum, it must arise out of conversation had between Meyers and the plaintiff. Mandlebaum, according to his own testimony, was a mere listener at the time of this conversation. *275 He does not swear that he said anything himself. As the aid of an interpreter was necessary on his examination, there is no very great presumption that he could have taken any part in making this parol lease, even if he had attempted to do so. Its terms were fixed, if one was made, by the conversation had between Meyers and the plaintiff His answer, taking it to be true, does not imply that Meyers had much knowledge in relation to it, as he does not undertake to state when it was " made, or whether to two or to one, and if to but one; to which one of the two, nor its terms.
We are of opinion that the judge correctly refused to submit the question of a surrender to the jury. The evidence, taken as a whole, in connexion with unequivocal admissions contained in the pleadings, shows that Whitney was asked to consent to a sale by the defendant, of his interest in the premises to Mandlebaum, and that he did consent, and said it would be all right if the rent was paid to the first of May. That as the defendant was going to Europe, he probably intimated that he would not insist on enforcing his right to be'paid quarterly in advance, provided it was punctually paid monthly in advance. But he did not agree, and was not asked to agree to resume possession himself, and relet the premises to Mandlebaum.
The old lease was not given up, nor was a request made that it should be. According to Mandlebaum, a request was made that his name should be inserted in the lease. If he is correct in this, it is enough to say that it was not done, and Mr. Whitney declined acceding to the request.
Mr. Whitney, according to this witness, said the lease “ was good enough if witness paid the rent to the first of May, and got a receipt in his name.” Whatever consent was given or agreement made by the plaintiff, it had this condition annexed to it. There was a failure on the first of February, 1850, to pay either a quarter’s or a month’s rent in advance. The consent or agreement ceased to be operative, either to relieve the defendant from his liability to pay the quarter’s rent falling due that day, or to confer any right on the defendant to occupy the premises thereafter. The testimony, taken together, does not tend to show a demise by the plaintiff to Mandlebaum.
The objection that the plaintiff evicted Mandlebaum by sum. *276 mary proceedings during the last quarter,..and therefore no rent can he recovered for any part of that quarter, is wholly untenable. Proceedings were commenced about the 9th of March, i860, and, according to the language of the answer, the plaintiff “ obtained judgment against áll persons claimed by said plaintiff .to be then in possession of said premises, and entered upon and took possession of the same.”
It is not. stated against-whom the proceedings were taken, nor whether they were had against persons alleged to be ten-' ants of Whitney, or undertenants of the defendant, whether a warrant was issued to remove the parties proceeded against, nor that any one was in fact dispossessed by virtue of such proceedings. The proceedings themselves were not put in evidence.
Such proceedings operate to cancel and annul the relation of landlord and tenant, between the parties, and the contract or agreement for the use of the premises, from the time of,the issuing of' the. warrant for the removal of the tenant from the demised premises, and not from the time of commencing the proceedings (2 R. S. 515, § 43; 6 Hill, 507; Hensdale v. White.)
In this case the rent fell due on the first of February for the whole succeeding quarter. The rent being payable in advance, an eviction before, the end of the quarter is.no bar to an action for the rent that bad previously become due. (Giles, Receiver, &c. v. Comstock, 270 of 4 Coms.)
The most that the defendant could claim on any equitable ‘ principle, was exemption from rent for so much of the quarter - as elapsed after the plaintiff took possession of the premises. The jury were instructed to make such a deduction, and they deducted for the month of April. The charge of the judge on this point was not prejudicial to the defendant, and we are satisfied with the finding of the jury.
A new trial must be denied, and the judgment appealed from affirmed with costs.