BENJAMIN W. WELLS, *Administrator, &c. v.* ANTHONY DE LEYER.

Where a lease contains a covenant for renewal upon a rent to be fixed by arbitrators, and the covenant is silent as to the time when such arbitrators shall be appointed, the covenant will be construed to mean that they shall be appointed a reasonable time before the expiration of the lease.

A lessee, under such a covenant, having been notified that the lessor had appointed an abitrator, and been required to appoint one on his own behalf, before the expiration of the lease, and having failed to do so, has, at the option of the lessor, waived his right to such renewal; and the landlord having given the lessee notice that he should require him to pay a rent of $200—this was *held* a new letting from year to year, and not a renewal of the former lease.

THIS was an appeal from a judgment of this Court, entered upon a decision of Judge Brady, without a jury. The complaint set up damages for the unlawful ejectment of the plaintiff from certain premises owned by the plaintiff's intestate in fee. The defendant answered, justifying the eviction under a lease from the plaintiff to West & Halsey, for four years and four months from the 1st day of January, 1851, with a covenant for three renewals for the term of five years upon a rent to be agreed upon by the lessor and lessee, or, in case of disagreement, by arbitrators, one to be chosen by each, and a third, if necessary,

Wells v. De Leyer.

by the arbitrators; and that the lessees had paid the rent reserved—that the plaintiff had evicted the defendant for nonpayment of rent, notwithstanding the defendant had always been willing and ready to pay such rent. That the lessees had tendered a lease to plaintiff, from the 1st of May, 1855, to 1st May, 1860, and named an arbitrator as required by the covenant in the lease, but that the plaintiff had refused to execute such lease. The plaintiff replied, admitting the lease, but setting up that no arbitrator had been appointed by the defendant before the termination of the first lease, though he had notified them, and requested them so to do, and that the lessees had neglected to pay the taxes according to the covenants of the lease.

Upon the trial, the judge found, as conclusion of fact, that the plaintiff, in February, 1855, had caused his agent, whom he had chosen as arbitrator under the covenant in the lease, to call upon the defendant, and require him to appoint an arbitrator to meet him; that the defendant had promised to do so, but had not done so. That the plaintiff's agent had thereupon informed the defendant that, if he remained after the 1st of May, 1855, he would have to pay a rent of $200 per annum. And then the defendant, having made default on the 1st of August, was dispossessed under a warrant in summary proceedings, which warrant described the premises as 206 E. 26th street, instead of 208 E. 26th street, which was the correct description, and that shortly afterwards the defendant had resumed possession of the premises. Some other facts were decided which were immaterial in regard to the decision.

Upon these facts, judgment was given that the plaintiff recover possession of the premises, and the defendants appealed.

George W. Geer, the plaintiff, having died pending the appeal, the suit was continued by his administrators, Benjamin W. Wells, and Erastus H. Lathans.

*Francis Byrne* for the appellant.

I. The lease from respondent to West & Halsey, was obligatory upon them and their assigns, to him for the rent of $100 for four years and four months from the first of January, 1851, and for fifteen years from first May, 1855, at a rent " *not*

Wells v. De Leyer.

"*less than* $100 *per annum in addition to all taxes and* "*assessments,*" which were to be paid by lessees, inasmuch as they covenanted "*to hire and take the said lot for the* "*term of years above recited, upon the conditions, and at the* "*rents aforesaid.*" *Jackson* v. *Kisselbrock*, 10 J. R. 366; 2 Duer, 465.

II. The covenant for rent, "to be agreed upon between the "parties," even if sufficiently definite to be enforced, or to found a cause of action, was for the benefit of the respondent; if he did not adopt the means provided in the lease to make the rent greater than the said sum of $100, it was his fault, and whether the agreement was to be made before or after the first of May, 1855, does not appear by the lease.

III. Until the terms of the agreement between the respondent and the lessees had been complied with by them, or the arbitrators had fixed the rent, the lessees had lawful right to hold at $100 per annum, and taxes and assessments.

IV. The covenant to *agree* as to the amount of rent to be paid does not affect the *possession, the term for which is certain*, viz: 4 years and 4 months, 5 years, 5 years, 5 years (19 years, 4 months); and the breach of such covenant affords *a cause of action* for the damages for the failure to agree.

V. That construction should be given which will uphold contracts, and not destroy them; the lessees are, by their covenant, bound, *in any event*, "to hire and take for the terms of years and at the rents aforesaid," and pay the taxes and assessments, the parties not having made any agreement for rent beyond, &c.; this covenant should, therefore, be considered equally binding on the respondent.

VI. Any summary proceedings taken by the respondent against the appellant upon the alleged agreement made between them and set forth in Wart's affidavit, did not and could not affect the lease by respondent to West & Halsey: the lessees were not parties to such proceedings, or even alluded to therein.

VII. Nothing appeared on the trial by which it could be determined that No. 206 East 26th street was the lot described in the complaint.

VIII. Any act of Warts, as agent of the respondent and the

Wells v. De Leyer.

appellant should not be considered as obligatory on the lessees, or as performed under the covenants in said lease.

*D. McMahon* for the respondent.

I. George W. Geer, the owner in fee of the premises in question, had the right, at the expiration of the first term of the lease to West & Halsey, to re-enter and resume possession of the premises in controversy. He could have refused to have appointed any arbitrator on his part, or to have submitted to any arbitration, and the only remedy the tenant or the assignee of the term would have had, would have been to resort to the covenants of the lease for damages, or to have brought an equitable action to compel the plaintiff, on his failure to arbitrate, to execute to him a renewal of the lease upon equitable terms, corresponding with the covenants in the lease. *Greason* v. *Kettletas,* 17 New York Rep. 491; *Abeel* v. *Radcliffe,* 6 John. C. R. 215; *Wittock* v. *Duffield,* 1 Hoffman C. R. 110.

II. After the expiration of the first term of the demise to West & Halsey, and after a reasonable time to arbitrate upon the rent for the renewal term, in the manner pointed out in the lease, had expired, Geer obtained possession of his premises by summary proceedings before a magistrate.

These proceedings entirely annulled the operative force of this lease *as a demise,* until the landlord voluntarily restored possession. It only existed in covenant thereafter. Where there is a covenant to renew, and the first term expires thereafter, the tenant holds over under the covenant for renewal. He cannot be said to hold over under the lease. *Per* Van Ness, J., in *Abeel* v. *Radcliffe,* 13 Johns. Rep. 299.

1. If the summary proceedings taken were legal and jurisdictional, the lease and covenants, so far as they operate by way of demise, were annulled by force of the statute. 3 Rev. Statutes, 5th ed. § 54; Laws of 1849, chap. 240, § 1; *Hensdale* v. *White,* 6 Hill, 507; *Whitney* v. *Myers,* 1 Duer, 266.

2. If not jurisdictional and void or voidable, yet the dispossession of the tenant was an eviction which destroyed the force of the lease, until the landlord voluntarily restored possession. *Dyett* v. *Pendleton,* 8 Cow. 731; *Christopher* v. *Austin,* 1st Kernan's R. 216.

3. The st[...]
tenants unde[...]
sion. This i[...]
54; Laws of [...]
4. The t[...]
himself in u[...]
performance [...]
arbitrate wl[...]
re-possessioi[...]
all its right[...]
174.

III. The[...]
Special Ter[...]
He failed [...]
1st. That [...]
lease, when [...]
precedent t[...]
and in fail[...]
the lease e[...]
holding ov[...]
to show a [...]
newed on [...]
*Conway* v.[...]

To have[...]
tion of the[...]
pressed a [...]
enants in [...]
term, also[...]
in the ca[...]
1854 and [...]
premises,[...]
of law h[...]
term. [...]

Whet[...]
as he wa[...]
ejectmen[...]
& Hals[...]
rightful [...]
newal—[...]

3. The statute relative to summary proceedings only allows tenants under certain circumstances to be restored to possession. This is not one of them. 3 Rev. Stat. 5th ed. p. 840, § 54; Laws of 1849, chap. 240, § 1.

4. The tenant could not, by his own act of re-possession, put himself in under the old lease, nor thereby enforce a specific performance of a contract to remain, or compel his landlord to arbitrate whether he wished it or not; nor could he make the re-possession equivalent to the renewal term of five years, with all its rights and privileges. *Jackson* v. *Schultz*, 18 Johns. 174.

III. The defendant made no case whatever before the Special Term, entitling him to a defence or to equitable relief. He failed to show the landlord in default, by proving, 1st. That he was ready to arbitrate, as required in the lease, when requested in that behalf. This was a condition precedent to the renewal term, so far as he was concerned; and in failure of that, he did not become a tenant at will when the lease ended (4 Kent, 114, 115, 8th ed.), but was a tenant holding over. *Rowan* v. *Little*, 11 Wend. 616. 2d. He failed to show a tender of rent even under the lease as it stood, if renewed on the same rent. *Abeell* v. *Radcliffe*, 15 Johns. 505; *Conway* v. *Starkweather*, 1 Denio, p. 113.

To have made the tender effectual, even under his construction of the renewal term, he should have offered to pay or expressed a readiness to pay taxes and assessments. By the covenants in the lease, he was bound to pay during the renewal term, also, the yearly taxes and assessments. By the admission in the case it appears that the landlord, Geer, paid the taxes for 1854 and 1855. 3d. The defendant was in possession of the premises, having the use and profits of its occupancy. In point of law he was estopped from denying he was assignee of the term. *Matter of Galloway*, 21 Wend. 32.

Whether he was assignee or not was immaterial, inasmuch as he was the sole occupier of the premises, and the action was ejectment, and there was an entire failure of proof that West & Halsey had offered to arbitrate, or had put themselves in a lawful position towards the landlord, entitling them to a renewal—in fact, the contrary.

Wells v. De Leyer.

IV. The omission of the tenant, De Leyer, to appoint an arbitrator, when requested by Wurtz on behalf of Geer, left him without any right as tenant to have a renewal under the lease. The notice given to him by Geer, if he stayed on the premises after the first of May, 1855, he would have to pay $200, and his neglect to dissent from his fixing of the rent, followed by his subsequent occupation without dissent, amounted to a waiver of arbitration on the part of De Leyer to fix the rent, and to an assent of the landlord's mode of fixing it. The arbitration was only to take place in case the parties failed to agree. It would, therefore, make him either a tenant from year to year at that rent, or a tenant for a renewal term of five years, at the rent of $200 a year, and taxes and assessments. *Conway* v. *Starkweather*, 1 Denio, 113 ; *Despard* v. *Walbridge*, 15 N. Y. Rep. 374.

By the Court.—Daly, F. J.—Upon taking the covenants together, it is plain that the premises were demised for five years at $100 rent per year, ending on the 1st of May, 1855, with a privilege of renewal for five years, at a rent which was not to be less than $100 per annum, to be fixed in the mode pointed out in the lease, and for two additional renewals thereafter of five years each, at rents to be fixed in the same manner.

It is immaterial whether the defendant was a sub-tenant of West & Halsey, or assignee of the lease, as neither he nor West & Halsey took any steps, before the expiration of the term, to appoint an arbitrator in pursuance of a covenant for a renewal. The landlord, through his agent, appointed an arbitrator, of which appointment the defendant was duly notified a reasonable time before the expiration of the term, but though urged several times by the plaintiff's agent to appoint an arbitrator, and though he promised to appoint one, and in fact declared that he had appointed one, and the arbitrator appointed on behalf of the landlord attended at the place and hour designated by the defendant to meet his arbitrator, he did not appear. The arbitrator appointed, who was also the landlord's agent, made repeated efforts thereafter. The defendant told him he would appoint another man, but would or did not do so ; and when the term was about expiring, the landlord's agent informed the

Wells v. De Leyer.

defendant that if he remained in occupation of the premises he would have to pay $200 rent after the 1st of May, 1855.

The landlord, by his covenant, had agreed to extend the terms at a rent to be agreed upon between the parties, and if not agreed upon, to be fixed and settled upon by arbitrators. If the landlord had failed to appoint an arbitrator on his part before the expiration of the term, the lessees or their assignees, might, in an action for a specific performance, have compelled the landlord to renew the lease at the rent previously paid, (*Greason* v. *Keteltas*, 17 N. Y. Rep. 496;) but as the terms expired, without the rent, at which the renewed term was to be granted, being fixed either by agreement or by arbitration, entirely through the neglect of the lessees, or their assignee, to do what they were required by the covenant to do, the estate in the lessees, or their assigns, ended, and the right to the renewal was gone. It is urged, by the defendant, that, as no time was fixed for the appointment of an arbitrator, that the covenant is void for uncertainty. If it is, then the lessees, or their assigns, derive no benefit from it, and it does not lie with them to complain. But I suppose that every such covenant is to have a reasonable interpretation, and that it may be gathered from it that it was the intention of the parties that the rent was to be agreed upon or fixed by arbitration, before the new term was to begin, for which a renewed lease was to be given, and if the neglect to do so was entirely attributable to the lessees, or their assigns, there was a failure of performance on their part, and they can take no benefit from the covenant.

The defendant, if he were the assignee, having failed to do what it was incumbent on him, if he wished to have the benefit of the covenant, and having continued in occupation of the premises after the expiration of the original term, after being notified by the landlord's agent that, if he did so, he must pay rent at the rate of $200 a year, and not having expressed any dissent, when so notified, I think he must be regarded as assenting to occupy the premises as a tenant from year to year at that rate.

Having neglected to pay the first quarter's rent at that rate, when it was demanded, the landlord resorted to the summary proceedings given by the statute to dispossess him. The afi-

Wells v. De Leyer

davit was sufficient to give the Justice jurisdiction to issue the summons. It contained all that the statute required. The summons was served upon the defendant, and he appeared before the Justice, and put in a counter-affidavit.

What was contained in the counter-affidavit did not appear, nor did it appear, as the Justice had lost his minutes, what testimony was given, or what was litigated before him. All that is shown by the process is that the Justice rendered judgment in favor of the landlord that he should have possession of the premises described in the affidavit, by reason of the non-payment of the rent specified therein. The premises were described in the affidavit as a lot of ground known as No. 206 East 26th st. in the City of New York. If there was a mistake in the number, the defendant could waive it (*Ferris* v. *Humphrey*, 4 Denio, 186), or if he took issue upon it, the judgment rendered by the Justice was conclusive against him. The only question that could arise upon the trial at the special term, was whether the proceedings before the Justice, related to the same premises, and this was conclusively shown. The judgment, given by the Justice, put an end to the tenancy subsisting by virtue of the implied agreement to pay rent at the rate of $200 a year, after the expiration of the lease to West & Halsey. 3 Rev. Stat. pp. 836, 838, 840, §§ 28, 39, 54, 5th ed.; *Hinsdale* v. *White*, 6 Hill, 507; *Whitney* v. *Meyers*, 1 Duer, 276. The defendant, having been removed from the premises, and the landlord put in possession under the warrant issued by the Justice, the entry by the defendant afterwards was unlawful. He was not then in occupation as a tenant at will, or at sufferance, or from year to year, but as a trespasser; and wrong doer, and ejectment would lie to recover possession of the premises.

The record of the proceedings for a forcible entry and detainer was properly excluded. The title to the premises is not in question in such a proceeding. The only matter inquired into, is whether the party charged entered by force upon one, having previously a peaceable possession, and held out by force. *The People* v. *Van Nostrand*, 9 Wend. 51; *People* v. *Leonard*, 11 Johns. 504; *People* v. *Rickert*, 8 Cow. 226. The judgment should be affirmed.

ISAAC N. STI[...]

The " act concer[...] called Hell Gat[...] constitutional a[...]

The clause in the[...] " to regulate co[...] (art. 1, § 8, su[...] upon the subjc[...]

APPEAL by[...] the First Judi[...]

The action[...] to recover ha[...] the Legislatu[...]

Upon the[...] the ground [...] void.

The plaint[...]

*Alanson* [...] *Frank By*[...]

HILTON, J.[...] tion to reco[...] provision [...] nel of the [...] April 15, 18[...] vices as pil[...] channel of l[...] Upon the[...] ground the[...] cover was n[...]