CHARLES A. COE, RESPONDENT, *v.* JOSEPH H. HOBBY AND WILLIAM H. HOBBY, APPELLANTS.

*Lease — surrender of — new agreement — validity of.*

By the terms of a lease for ten years, under seal, the lessee covenanted to pay a certain rent. Subsequently the tenant refused to pay the rent, and asked for a reduction ; the rent was reduced by parol agreement between the parties without consideration. *Held,* that the new agreement as to the amount of rent did not operate as a surrender of the lease, and was void for want of consideration.

The effect of a new lease entered into by parol, upon an existing lease under seal of the same premises, discussed by BRADY, J.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury by direction of the court. The action was brought to recover for rent of certain premises in the city of New York. The defendant had executed a lease of the premises with the grantor of the plaintiff for ten years, at an annual rent of $5,000. The lease was under seal, and had been recorded. By a subsequent parol agreement the rent was reduced to $4,000, and the lessees paid this sum to the lessor, taking his receipt in full therefor, until the property was conveyed to the plaintiff, who demanded the rent specified in the lease.

*Charles Edward Souther* and *Everett P. Wheeler,* for the appellants. The jury should have been allowed to pass upon the issue of fact in respect to the agreement. ( *Winchell, Exr., etc.,* v. *Hicks,* 18 N. Y., 558 ; *O'Neill* v. *James,* 43 id., 84 ; *Barnes* v. *Perine,* 12 id. [2 Kern.], 18. A lease may be surrendered otherwise than *in writing.* (2 R. S., 139, § 6. [Edm. ed.].) The making of a new lease of the same premises to the same tenant, during the term of

an existing lease, operates as a surrender of the prior lease. (Viner's Abridgment, tit. "Surrender," F., and cases cited ; Roberts on Frauds, 253, 255, and cases cited ; Platt on Leases, vol. 2, p. 506, and cases cited ; Woodfall's Landlord and Tenant [10th Eng. ed.], 267, *et seq.*, and cases cited ; Kent's Commentaries, vol. 4, pp. 103, 104 ; Brown's Statute of Frauds, 47, 49–55, and cases cited ; Washburn on Real Property [3d ed.], vol. 1, pp. 475–480, and cases cited ; *Livingston* v. *Potts*, 16 Johns., 28 ; *Van Rensselaer's Heirs* v. *Penniman*, 6 Wend., 569.) The assignee of a reversion stands in the shoes of his assignor. (1 R. S., 698, § 23 [Edm. ed.] ; *Van Rensselaer* v. *Hays*, 19 N. Y., 83.) The new lease need not be *in writing.* (Viner's Abridgment, tit. "Surrender," F., and cases cited ; *Mellows* v. *May*, Cro. Eliz., 874 ; *Thomas* v. *Cooke*, 2 Starkie, 408 [1818] ; S. C., 2 B. & Ald., 119 ; *Lyon* v. *Reed*, 13 Meeson & Welsby, 284 [1844] ; *Nickells* v. *Atherstone*, 10 Q. B., 943 [1847] ; *McDonnell* v. *Pope*, 9 Hare, 705 [1852] ; *Van Rensselaer's Heirs* v. *Penniman*, 6 Wend. 570 [1831] ; *Schieffelin* v. •*Carpenter*, 15 id., 400 [1836] ; *Smith* v. *Niver*, 2 Barb., 180 [1848] ; *M'Kinney* v. *Reeder*, 7 Watts, 123 [Penn.].) The new agreement here was *executed*, and an executed parol agreement may always vary or discharge a specialty ; and because it is not the agreement alone, but *the thing done under it*, that is relied on. (*Keating* v. *Price*, 1 Johns. Cas., 22 [1799] ; *Fleming* v. *Gilbert*, 3 Johns., 528 [1808] ; *Lattimore* v. *Harsen*, 14 id., 330 [1818] ; *Dearborn* v. *Cross*, 7 Cow., 48 [1827] ; *Delacroix* v. *Buckley*, 13 Wend., 71 [1834] ; *Townsend* v. *Empire Stone Dressing Co.*, 6 Duer, 208 [1856] ; *Dodge* v. *Crandall*, 30 N. Y., 294 [1864] ; 9 Alb. Law Jour., 297, and cases cited ; *Dickinson* v. *Commissioners, etc.*, 6 Porter, 128 [Ind.] ; *White* v. *Walker*, 31 Ill., 422, p. 17, fols. 58, 59.)

*John L. Cadwalader* and *S. P. Nash*, for the respondent. The alleged agreement to reduce to $4,000 was *nudum pactum.* (1 Chit. on Cont., 62 [Am. ed. of 1874] ; *Parmelee* v. *Thompson*, 45 N. Y., 58.) In order to effect a surrender by act or operation of law, there must be a mutual agreement between the parties, that the lease shall terminate, and an actual yielding up of the premises. (*Bedford* v. *Terhune*, 30 N. Y., 453 ; *Whitney* v. *Myers*, 1 Duer, 266 ; *McKenzie* v. *Farrell*, 4 Bosw., 192.) Strictly, a surrender by act

or operation of law, exists, only when the new estate accepted by the lessee is created in writing. (Rob. on Frauds, 253, 254; 2 R. S., 134, 135, § 6; 4 Kent Com., 103, 104.)

BRADY, J.:

The defendants are tenants under a lease for ten years from May, 1869, at an annual rent of $5,000. That lease was under seal, contained the usual covenants, and was duly recorded. It was executed by Louisa A. Ingersoll, then the owner of the fee, who, on the 15th May, 1873, conveyed the premises, subject to the lease, to the plaintiff. This action was commenced to recover $1,250 for rent of the premises, due on the 1st August, 1873. The defense was that, before the purchase by the plaintiff, his grantor and the defendant's lessor had reduced the rent to $4,000; that the lease had been surrendered, and that the defendants, from February, 1872, to May, 1873, had occupied the premises as tenants, from year to year, at the ·reduced rent already named. The change in the character of the tenancy thus averred, resulted from the surrender and the new agreement by which it was accomplished. The agreement was not in writing. In proof of the surrender, the defendant Joseph H. Hobby testified as follows: " I am a storage merchant, and my office is at 247 South street, in the city of New York; have occupied the premises in question about ten years; I entered into possession under the lease, which has been introduced in evidence; in or about the quarter commencing November 1, 1871, I informed Mr. Ingersoll that we could not pay so large a rent, that it was too large, and that we must come down to the original price which we at first agreed upon, and which was $4,000, or $1,000 per quarter; he did not feel inclined to acquiesce in this, and wished me to wait until the next year; I replied that we could not do it — that other parties would give me twenty per cent off; so I paid him $500 on account of this quarter's rent, and Mrs. Ingersoll then commenced suit against us for the balance of $750, and sent her attorney to me with propositions of settlement, which were not accepted; her attorney was a gentleman named Hollis; he asked me what proposition I had to make, and I told him; he went to Ingersoll and came back to me and said that if I would pay the costs of court he would withdraw the suit, and the rent should be $4,000 a year;

I did so, and have paid that rent up to the time Mr. Coe demanded of me $1,250; the costs which I paid were, I think, seventeen dollars and fifty cents, and for the respective quarters' rents which I paid, I took the receipts now shown me."

He further testified as follows:

"Mr. Ingersoll never asked for more rent; he did ask permission to sell the store, and told me I should have $2,000 if I got a customer and moved out, and $1,000 if somebody else sold it, and I moved out; Oliver Ingersoll followed me up in South street, and told me his father had authorized him to make that offer; I did not make any bargain to continue any longer than till he could sell the store, provided he gave me the $1,000 and gave me notice.

"Q. You agreed to move out on three months' notice, if paid your expenses? A. Yes, sir.

"Q. I am speaking of the other point — I understood you to say you did state to Ingersoll, after you paid the costs, and suits discontinued, that you had agreed with Hollis that this reduction of rent was to continue as long as you were a tenant there? A. Yes, sir.

"Q. And not for a year, there was no such statement made? A. No, sir; provided he sold the store —

"Q. Then you were to have the privilege of moving out on giving three months' notice? A. Yes, sir.

"Q. The reduction of the rent was to continue as long as you stayed? A. Yes, sir."

The payments of rent after the agreement thus stated to have been made were at the rate of $4,000 per annum, and receipts were given in full for the rent thus paid, up to the time when it became due. The surrender, as already suggested, was by parol; if at all, confirmed by the receipts of the rent in full, which were in writing. Upon the conclusion of the evidence, the defendants asked leave to go to the jury on the question of fact, whether the agreement, which was disputed by the plaintiff, was made as testified by the defendant Hobby. This request was denied, and the defendants duly excepted. It was necessarily conceded that a surrender may be made by act, or operation of law. (3 R. S. [5th ed.], 220.) It may be inferred from the conduct of the parties. It is not necessary that there should be an express agreement for the purpose. (*Bedford* v. *Terhune*, 30 N. Y., 463.) It may be initiated, therefore, by a parol agreement, and con

firmed by the acts or conduct of the parties. If the surrender rests upon a new or second lease while the first is running, it seems to be essential that the second lease shall be a valid one. It is, however, said NELSON, J., conclusively settled, by authority, that the second lease must be a valid one, so as to convey the interest it professes to convey to the lessee, and also to bind him to the performance of the covenant or agreement in favor of the lessor, in order to operate as an effectual surrender of the first one. (*Schieffelin* v. *Carpenter,* 15 Wend., 406.)

Hence, it was held in this case cited from the 15th Wendell, that a parol lease for more than a year to a third person, though he takes possession, will not operate as a surrender. This same rule was applied in *Whitney* v. *Meyers* (1 Duer, 266), and both cases are cited approvingly in *Bedford* v. *Terhune* (*supra*). In this case it appears, from the defendant Hobby's evidence, that the new arrangement was to the effect, namely, that he was to pay $4,000 per annum as long as he remained, with the understanding that if the premises were sold by his lessor, he was to have the privilege of moving out, on giving three months' notice. If this agreement, assuming it to have been made, is valid, within the rule stated, then the defendants were entitled to a submission to the jury of the question involving its alleged existence. The surrender does not depend upon the doctrine of consideration, but upon the intention of the parties, indicated by, or to be inferred from, their acts. (*Van Rensselaer's heirs* v. *Penniman*, 6 Wend., 570 ; *Schieffelin* v. *Carpenter*, 15 id., 406 ; *Smith* v. *Niver*, 2 Barb., 180 ; *McKinney* v. *Reeder*, 7 Watts, 123 ; *McDonald* v. *Pope*, 9 Hare, 705 ; *Thomas* v. *Cooke*, 2 Starkie's Rep., 409 ; *Bedford* v. *Terhune, supra.*)

The lessor has the right to change the relations existing between himself and his tenants, if they prefer that he should, and it may well be conceived that it might be advantageous to the reversion, to relieve the estate from the burden of a long lease. The grant of a second lease, however, is inconsistent with the continued existence of the prior one, and the effect of that inconsistency is equally binding upon both parties, lessor and lessee. (Cases, *supra.*) The rigorous rules which prevail in reference to sealed instruments generally, do not apply to leases which, as we have seen, though resting in covenants, may be surrendered — that is, yielded up and canceled —

and the parties released, therefore, from their covenants, by acts which establish it, or by operation of law. The only condition which seems to attach, by the law of this State, when the surrender is by a second lease between the same parties, during the life of the first, is that the second agreement or lease shall be valid, according to the intent of the parties. On this subject a statement of the defendant Hobby, upon cross-examination, is important. He was asked whether he meant to say, if he stayed on the premises the whole ten years the reduced rent was to be continued, and he answered in the affirmative. It appears clearly, therefore, that in his interpretation and understanding of the agreement, it had relation to the whole term of the lease, subject only, to a sooner determination of the demise by a sale of the premises. This is confirmed by the provision giving him the right to remove, if the premises were sold, after three months' notice of his intention so to do. The new lease thus asserted was invalid as such, resting in parol. It was for a period of ten years, in contemplation of the parties, and made the defendants tenants at will. It is within the adjudication of *Schieffelin* v. *Carpenter* (*supra*), in which it appeared that the alleged new letting was to a stranger, by parol for eight years. An implied tenancy at will only was created, it was said, which enabled the tenants to hold from year to year, for the purpose of notice to quit, but which they could terminate at any moment they pleased. The agreement conferred, it was also said, no rights upon the plaintiff, further than to recover his rent while they continued to occupy, and, perhaps, a quarter's rent if they abandoned the occupation, after the commencement of a quarter and before its termination. It was suggested, also, that if the agreement had been made with the original tenant, the result would be the same. The second lease failed to have the effect claimed, namely, to pass the interest in the premises according to the contract, or, in other words, to carry into legal effect the intent of the parties making it, and was declared to be invalid. The same result attains here. The agreement cannot be effectuated. It fails to satisfy the rule of law stated. It is not valid. It cannot carry out the design of the parties, which was to extend it over the period of the demise, and which could not be done by parol. That is the only consideration, if any, which seems to be demanded.

It is quite apparent, also, if the agreement was made, that the only object in view was the reduction of the rent, and nothing more. The term was to continue, but the rent was to be $4,000, instead of $5,000, per annum. This change could not be obtained by surrender; such an act contemplates the whole estate, because the contract is entire, and incapable of being divided or avoided for part, and left standing for part. (Roberts on Frauds, 254.) It could be accomplished only by an agreement therefor, which was binding, either because of the consideration on which it was founded, or of some other principle giving it vitality and force. It rested in parol, unless the receipt converted it into writing. But in either case it has no support, because it has no consideration to sustain it. The payment of the rent, whether in whole or in part, was the discharge of an existing obligation. The payment of the costs, in the action commenced against the defendants, was also the discharge of an obligation, imposed by the law of the land. The defendants surrendered nothing; paid nothing; in fact did nothing to which we have been referred, beyond what they were bound to do prior to the agreement, as to the reduction of rent, assuming it to have been made for the whole term. It is true, as claimed by the defendants' counsel, who has presented his case with great ingenuity, exhibiting labor and research, that an executed parol agreement, *upon a sufficient consideration*, may operate to discharge the stipulations of a sealed contract, but this case is not within the terms expressed. There is no consideration whatever. If the terms of the contract created by the change had, in any way, benefited the lessor, or in any way damaged the defendants, we might, from such a circumstance, have presumed a consideration; but from the facts detailed on behalf of the defendants, giving them the full benefit of all disclosed, it is clear that the reduction of the rent was voluntary and gratuitous, and without consideration. The judgment must, therefore, be affirmed, because the surrender was incomplete, and the agreement to reduce the rent, void for want of consideration.

DAVIS, P. J., and DANIELS, J., concurred, on the ground the agreement was void.

Judgment affirmed.