McCay *v.* Wait.

---

———— • • ————

SARAH N. McCay and WILLIAM S. McCay, by A. J. McCall, their guardian, *vs.* MARVEL WAIT.

Although the common law doctrine of *waste* is not, in its strictness, applicable to the condition of things in this country, such a cutting of trees or timber by a tenant as will work a permanent injury to the freehold or inheritance, in the absence of any specific leave or license to cut such trees or timber, is *waste* for which an action will lie, in equity, for the prevention of such injury, by injunction, before it is committed, or at law, for the recovery of damages, by the remainder-man, after the injury is done.

Whether the cutting of trees and timber in any case is such an injury to the inheritance, or not, is necessarily a question of fact for the jury, or the court, when the action is tried by the court, without a jury.

THIS is an action to recover for waste, alleged to have been committed by cutting timber, and was tried without a jury at the Steuben circuit, in November, 1866, a trial by jury having been waived by the parties. After hearing the evidence of the parties and the arguments of their counsel, the court found the following facts:

1st. That William W. McCay, deceased, was in his life time seised in fee of a farm situated in the village of Bath, New York, lying between Morris street, in said village, and the Conhocton river, containing about eighty acres.

2d. That said William W. McCay died in 1852, leaving a will by which he devised about thirty acres off the west end of said farm to his wife, and the residue to his son, William B. McCay, during his life, and after his death to the heirs of the said William B. McCay in fee.

3d. That said will was duly proved before the surrogate of the proper county, on or about the 6th January, 1853.

4th. That soon after the death of the said William W. McCay, the said William B. McCay took possession of the said premises so devised to him. That on the first day of November, 1858, the said William B. McCay leased the premises devised to him as aforesaid, for the term of five years from the 1st day of April, 1859, to the said defendant, who entered upon and took possession of the same under said lease. That on 31st December, 1851, William Hornby recovered a large judgment against said William B. McCay, on which an execution was issued to the sheriff of Steuben county, who, by virtue thereof, sold the life estate of said William B. McCay in said premises, to the defendant. That on the 13th June, 1862, the sheriff conveyed the life estate of said William B. McCay in the premises in question to the defendant, and that said defendant continued in possession of the same.

5th. That the said William B. McCay is now living. That the plaintiffs are his only children, and are the grand children of the said William W. McCay, deceased. That

McCay *v.* Wait.

the plaintiffs are seised of an estate, in remainder, in the premises in question.

6th. That William W. McCay, shortly before his death, had conveyed about two and one half acres off from the northeast corner of said farm, for the purposes of a cemetery. That on the south and west of such cemetery was a piece of standing timber, which, with the cemetery, was in the form of a parallelogram. That the south and west sides of said timbered land were straight and smooth; the east side being on the east line of the farm, and that there were about four rods of this timber land fronting on Morris street. That there were six acres, in this piece of standing timber; that the same had been set apart, kept and preserved a great many years, and was known as the " Grove." That it had never been used as a wood lot, except that when a tree had blown down it was cut up and taken off. That this timber lot or grove was kept clean, and had been used for pic nics and other public purposes, and was an ornament and benefit to the farm; that there was no other timber or wood on the farm, except a few trees on the bank of the river. That just west of the grove was a strip of cleared land, and west of that a swamp of two or three acres, and some village lots.

7th. That in March, 1864, the said defendant, while in possession of the premises in question, as aforesaid, wrongfully cut and destroyed, and converted to his own use, all the timber on the north part of said grove, standing adjoining and south of Morris street, in said village, and extending as far back as the south line of said cemetery, covering about two acres, thereby disfiguring the premises in question, and materially injuring the inheritance. That thus cutting the timber on the front part of said grove was a greater injury to the premises in question than if the same quantity of timber had been cut from the back part of said grove. That the defendant did not pull the stumps of the timber after taking off the same. That the

timber thus cut as aforesaid was second growth oak.    That the market value of the same was sixty dollars, at the time of cutting the same.

As conclusions of law, the judge found,

1st. That the defendant, in cutting and destroying the timber, as aforesaid, committted waste on the premises in question, of which the plaintiffs are seised of an estate of inheritance.

2d. That the plaintiffs are entitled to recover of the said defendant, for the same, the sum of $60, with interest from the first day of April, 1864; and he directed judgment to be entered in favor of the plaintiffs, and against said defendant, for that sum, with costs.

The defendant appealed from the judgment so entered.
—щ

D. Rumsey, for the appellant.    I. The main question in this case is, whether, upon all the facts, the defendant is guilty of waste.    It is probably true that he has been guilty of a breach of good taste in cutting this timber; but we insist at the outset, that the question of good or bad taste has nothing to do with the matter. And it seems very clear that if the question can be reduced to the simple one of the legal rights of the parties, there remains no principle upon which this judgment can be sustained.    1. The timber was all used for the purposes of the farm, for fuel, fencing and repairs.    A tenant for life has a right to cut timber for each of these purposes; and Wait was here tenant for the life of W. B. McCay. (2 Black. Com. 122.    Jackson v. Brownson, 7 John. 227. Bacon Ab. title Waste, c.)    2. Sufficient wood was left for all of the purposes of the farm, and there was no other wood on the farm.    So the court finds.    In this country, the tenant for life may clear land for the purpose of cultivation, as was done here, and if he leaves timber enough for all the purposes of a farm, it is not waste.    (Jackson v. Brownson, 7 John. 227.    Kidd v. Dennison, 6 Barb. 9.

*Bingham on Real Estate,* 578.   *Van Deusen* v. *Young,* 29 *N. Y. Rep.* 9.)   Here the defendant cut timber for a lawful purpose, and the cutting could not have been waste, even under the strictness of the English rule.   As there was no other wood on the farm, the defendant had a right to cut so much as was necessary for fuel, provided he left enough for the uses of the farm.   He cannot be compelled to buy firewood, while the premises furnish a supply of wood suitable for that purpose.   There is no pretense that he cut any more than was necessary for these proper purposes.   The pretense of W. B. McCay that the ash, elm, sycamore and butternut trees along the bank of the river should be cut for wood, is simply absurd.

II.   The ornamental character of these trees has nothing to do with the questions in the case.   While the books contain the general doctrine that it is waste to cut "ornamental" trees, it will be found on examination that the trees referred to, are trees standing "in defense or safeguard of the house," or trees standing in ornamental grounds in direct proximity to the mansion house, or isolated trees serving for shade or shelter, as in a door yard, or on a lawn.   But none of these references to ornamental trees can be applied to a body of native timber covering seven or eight acres.   These trees were not ornamental to the farm.   They were ornamental to the village, perhaps, and cutting them may have lessened the attractions of Morris street.   All the witnesses on that subject speak of it in connection with the cemetery and the street.   But the injury to the cemetery or to the public is not the ground of this action.   It was not connected with the dwelling house or the farm, and was not, in fact, in sight from it.

It needs neither argument nor authority to prove that the life tenant is entitled to take the necessary fuel, fencing stuff, &c. off the land.   In doing this he may cut any trees growing on the land save *ornamental trees.*   What are

ornamental trees? In *Coffin* v. *Coffin*, (1 *Jacob's Ch.* 71,) the lord chancellor says: "The court does not protect timber because it *is* ornamental, but it protects it *if it was planted for ornament,* whether it is or is not ornamental." In *Tamworth* v. *Ferrers*, (6 *Vesey, Jr.* 419,) the court held ornamental trees to be those which were planted or growing there for the protection or shelter of the several mansion houses belonging to the estate, or for the ornament of said houses, &c. In *Burges* v. *Lamb*, (16 *Vesey, Jr.* 183,) Lord Chancellor Eldon, says: "At least the timber must be described not as ornamental merely, but as planted and growing for ornament." On page 185 he says: "The application of that principle to a wood covering thirty acres is carrying it to an extent of which I do not recollect an instance, and I cannot admit it is wiser to extend than to confine these injunctions." In *Day* v. *Merry*, (16 *Vesey, Jr.* 375,) the trees were planted to exclude objects from view. In all these cases it is evident that ornamental trees are such only as were planted or kept for the protection of the manor house on large estates, and intended only for ornament. It has never been held to extend to an ordinary wood, no matter how pretty it may look. That the trees cut in this case were not kept solely for ornament, is evident from the fact that it was part of the original forest, and not planted; that Mr. McCay when he wanted wood, &c. had cleared a part of the same grove; that he had sold another portion of it for a cemetery; that this was not near the mansion house for its protection; that it was the only wood on the farm for the use of the farm; and it is entirely evident from the case that holding this wood lot as ornamental trees, simply because it was pretty, would be an abuse of the rule of law and have the direct effect to deprive the tenant for life of one of the essential rights connected with his estate.

Nor can the manner in which the McCays treated this timber affect the question. A wealthy owner was at

liberty to consult his tastes or those of his neighbors, but could not, by his action, bind any one coming after him. A man of large wealth might, if he chose, permit thousands of dollars to lie idle, in despite of all ideas of thrift or prudence. If such an owner regards a field of daisies more beautiful than one of corn, is his successor prohibited from plowing and planting something useful? Yet once allow the question of taste as a criterion, and the one proposition is as reasonable as the other. Men will differ on the question, according to their ideas, as to how far a regard for appearances should overcome considerations of thrifty management of property, so as to make it pay. But the elder McCay did not, in fact, preserve the timber. He cleared off and reduced to cultivation several acres in the rear, and also a part in front, just where the defendant cut, and afterwards disposed of nearly the whole remaining front for a cemetery, and this last was only a year or two before his death, for he died in 1852, and the cemetery was not laid out until 1851. Whatever he did or omitted to do before the cemetery was laid out, he did then sell all the ornamental part, and nobody knows what he would have done after that, had he lived. This is not a question as to the acts of a tenant for life of this grove, simply, but of the tenant for life of this farm. This was to all intents and purposes a farm, as much as if it had been four miles from a village; and the tenant is not subject to any rule of law different from that applicable to any other farmer. Would the owner of a farm, the owner in fee simple of land worth $150 per acre, keep such land for the purpose of raising timber in competition with the forests around him? Certainly not as a matter of good husbandry.

Nor does the fact that the farm would be worth more with the timber on than with it off, affect the question. If the tenant had a right to cut the timber, then the fact that it diminished the value of the land, is immaterial,

McCay v. Wait.

and if, on the other hand, he had no right to cut it, it would be waste, although the value of the land was increased. (*McGregor* v. *Brown*, 6 *Seld.* 114. *Van Deusen* v. *Young*, 29 *N. Y. Rep.* 9.) And this proposition necessarily excludes the whole question of ornament, pic nics and cemeteries.

·  The judge finds that by cutting the timber in front, the premises were injured in a greater degree than if the same quantity had been cut in the rear. This must be so, if at all, because it ornamented the street and cemetery, for it was the same kind of timber, and was an outlying portion which, being cut, left all the timber in one body. The fact itself is immaterial, for if the defendant had a right to cut off timber at all, he had a right to exercise his discretion as to where he would begin. At all events, a mistake in that respect would not make him liable, nor does the court give judgment on that ground. The judgment is for the whole value of all the timber cut.

III. The court erred in overruling the objection of the defendant, to evidence of the value of the farm with these trees on. 1. The evidence was entirely immaterial. The question is not whether the farm was worth less or more, but whether this timber was such that the defendant had a right to cut it for fuel and fences. 2. It was not competent on the question of damages. (*McGregor* v. *Brown*, 6 *Seld.* 114. ' *Van Deusen* v. *Young*, 29 *N. Y. Rep.* 9.)

For this error a new trial should be granted.


*C. F. Kingsley*, for the respondents. I. The plaintiffs were seised of an estate in remainder, in the premises, and were the proper parties to bring this action. (*Van Deusen* v. *Young*, 29 *N. Y. Rep.* 9. 4 *Kent's Com.* 231.)

II. Waste is a spoil or destruction in houses, gardens, trees or other corporeal hereditaments, to the disherison of him that hath the remainder or reversion in fee simple or fee tail. (2 *Black. Com.* 282. *Co. Litt.* 53.) 1. The

tenant destroyed trees which he cannot produce. This is disherison. The estate in remainder is wasted. (*Livingston* v. *Reynolds*, 26 *Wend.* 122. *Kidd* v. *Dennison*, 6 *Barb.* 9.) 2. Oak, ash and elm are in all places considered timber, and cutting them is waste. (2 *Black. Com.* 282. 1 *Greenleaf's Cruise*, 121.) 3. The timber was white, black and red oak, and the majority alive. Seldom a tree dies entirely. There were 242 trees cut, averaging from seven to twenty inches in diameter. They were all live trees; the stumps had all sprouted. 4. The defendant sold three cords of the wood, which he had no right to do. (*Sarles* v. *Sarles*, 3 *Sandf. Ch.* 601.)

III. The defendant claims that he cut this wood for fire bote. He was bound first to cut the dry, fallen, or perishing wood (which he did not do.) (*Jackson* v. *Brownson*, 7 *John.* 236. *Clark* v. *Cummings*, 5 *Barb.* 339.) 1. He should have cut the wood from the rear of the grove, where all the witnesses agree it would have been a less injury to the place than cutting them where he did. 2. If the defendant had a right to cut this timber for fire bote, he would have had to cut it all down to have kept him in wood during the time he occupied the same, and when the plaintiffs came into the possession, there would not have been a stick of timber or a tree on the farm. 3. The defendant was not entitled to fire wood from the farm if taking the same was an injury to the inheritance. (*Gardner* v. *Dering & Hempstead*, 1 *Paige*, 573.) 4. To what extent wood and timber may be cut is a question of fact for the jury to determine. (*Bouvier's Law Dictionary*, title *Waste*, 644. *Jackson* v. *Brownson*, 7 *John.* 227.) The court below has found, as a question of fact that cutting this timber by the defendant disfigured the premises and was a material injury to the inheritance, and therefore waste, by the decision of *Gardner* v. *Deering and Hempstead*, (1 *Paige*, 573.) 5. It was never intended that the defend-

ant should get his fire wood from this. It had been set apart, kept and preserved for thirty or forty years, by the testator, W. W. McCay, and was known as the grove, and never had been used for a wood lot. 6. The defendant did not cut any of the timber except the dead trees, till 1864, when he heard W. B. McCay was in the army, and there was danger of losing his life estate.

IV. The defendant also claims that he intended to fit the land for cultivation. This he did not do, but kept the same a year and then sold wood to Allen, and did not pull out the stumps. There was good pasture in the grove, and it was not necessary to cut trees for pasture.

V. An injunction will issue restraining a party from cutting timber standing and growing for ornament, even if two miles distant from the house. (*Lord Tamworth* v. *Lord Ferres,* 6 *Ves.* 419. *Day* v. *Merry,* 16 *id.* 375. *Burges* v. *Lamb, Id.* 182. *Coffin* v. *Coffin, Jacob,* 70. *Bacon Abrid. title Waste, N.* 1 *Greenleaf's Cruise,* 141.) 1. The principle on which the court has gone is that if the testator has gratified his own taste in regard to the situation of ornamental trees, his wishes are to control, even if most disgusting to the tenant for life. (*Bacon Abrid. tit. Waste, N.* 1 *Greenleaf's Cruise,* 141. *Dounshire* v. *Lady Sandys,* 6 *Ves.* 107.) In this case the testator had set apart and preserved this grove as an ornament to the place for thirty or forty years, and never allowed any of it to be cut.

VI. The English rule should be applied in this case. It is only changed where the land is new and uncultivated. (*Jackson* v. *Brownson,* 7 *John.* 236.)

VII. What the plaintiffs have had the good luck to sell the grove for has nothing to do with this case. There is no evidence as to what the grove was worth per acre. It was proved that the land, without the timber was worth $150 per acre. And all the witnesses agree that cutting the timber was an injury to the farm.

McCay *v.* Wait.

*By the Court,* E. DARWIN SMITH, P. J.   Waste, as Black-
stone defines it, is "a spoil or destruction in houses,
gardens, trees, or other corporeal hereditaments to the
disherison of him that hath the remainder or reversion in
fee simple or in tail."   (2 *Black. Com.* 382.)

The doctrine of waste of the common law is not in its
strictness applicable to the condition of things in this
country.   What in England might be injurious to the in-
heritance and therefore waste, would probably, in most
parts of this country, be the very reverse of injury to,
would be actual improvement of, the estate.   But the law
remains with us as in England, that such cutting of trees
or timber as will work a permanent injury to the freehold
or inheritance, in the absence of any specific leave or
license to cut such trees or timber, is *waste* for which an
action will lie, in equity, for the prevention of such injury
by injunction, before it is committed, or at law, for the
recovery of damages, by the remainder-man, after the
injury is done.   Such is this action.

.Whether the cutting of trees and timber in any case is
such an injury to the inheritance, or not, is necessarily a
question of fact, and depends upon the particular circum-
stances of every case.   This question belongs to the jury,
unless it is tried by the court, as in this case, by the con-
sent of the parties, when the judge is substituted in the
place of the jury.   (*Jackson* v. *Brownson*, 7 *John.* 226.   *Doe*
v. *Wilson*, 11 *East*, 56.   *Hinchman* v. *Irvin*, 3 *Dana, Ken.*
123.)

The learned judge who tried this action at the circuit,
finds as matter of fact that the defendant, while in posses-
sion of the premises in question, wrongfully cut and de-
stroyed and converted to his own use all the timber on
the north part of said grove, standing adjoining and south
of Main street, in said village of Bath, covering about two
acres, disfiguring the premises in question, and materially
injuring the inheritance.   And he further finds, as a con-

clusion of law, that the defendant, in cutting and destroying the timber aforesaid, committed waste on the premises in question, of which the plaintiff was seised of an estate of inheritance. The finding in fact is in substance and effect a finding that the cutting of the timber in question was *waste*.

This finding not being unwarranted by the evidence; it seems to me conclusive, and cannot be disturbed.

The judgment must, therefore, be affirmed.

[MONROE GENERAL TERM, June 1, 1868. *E. D. Smith, Johnson,* and *J. C. Smith,* Justices.]