JOSEPH AGATE, Appellant, *v.* ABRAHAM LOWENBEIN et al., Respondents.

A lessee, in the absence of an agreement to that effect or of an express permission from his lessor, is not justified in making alterations in the demised premises. The taking down of partitions is apparently an act of waste; the question whether it is injurious is one of fact for a jury.

A lease of certain premises contained a clause authorizing the lessee to make inside alterations' as he might think proper, provided that the same did not injure the premises. *Held* (LOTT, Ch. C., and GRAY, C., dissenting), that while the clause authorized alterations which in point of law and technically would be waste, yet they must be such acts only as were unaccompanied with actual injury to the premises; and the acts of alteration must not be wanton and capricious, but must be made with a purpose to facilitate the transaction of the lessee's business.

Under this lease the tenant made extensive alterations, taking down partitions, removing chandeliers and destroying plumbing work, etc. In an action to recover for the alleged injuries, *held* (LOTT, Ch. C., and GRAY, C., dissenting), that the questions whether the acts really caused injury to the reversion or were reasonably required for the enjoyment of the premises, were questions of fact; and that a refusal of the court to submit them to a jury was error.

Also, *held* (LOTT, Ch. C., and GRAY, C., dissenting), that if the question of injury was one of law, the acts shown were an abuse of the license and entitled plaintiff to recover.

The lessor in such case is not bound to wait until the expiration of the tenancy before bringing his action. If the acts were in fact injurious, an action could be maintained thereon immediately.

The authorities upon the subject of waste, and as to the proper time for bringing action therefor collated.

*Schieffelin* v. *Carpenter* (15 Wend., 400) and *Winship* v. *Pitts* (3 Paige, 259) distinguished.

The right to make alterations conferred by said clause did not confer upon the tenant the ownership of the materials severed by him, and for the appropriation thereof he would be liable even when he was unimpeachable for waste.

(Argued May 11, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of defendants, entered upon an order at circuit dismissing the complaint.

This action was brought by plaintiff as lessor, against the defendants as assignees of a lease of premises known as No. 645, and the three upper floors of No. 647 Broadway in the city of New York, to recover damages for alleged injuries thereto.

The lease was executed by the plaintiff to one Eugene Mendes for ten years from May 1, 1866. The defendants became assignees in the same year. The defendants, in 1869, made extensive alterations, taking down and removing a number of partitions and doors, gas fixtures, chandeliers, etc. The defendants justified the injuries done by reason of a clause contained in the lease in the following words: "That the lessee shall have the right to make any inside alterations to said premises as he may think proper, provided the same do not injure the premises."

The buildings were erected in 1859, and the plaintiff being unable to rent them as they were originally built, had them fitted up as a hotel. It was understood by the parties that the premises were to be used, to some extent at least, for business purposes. The acts of destruction referred to in the complaint were all done under the direction of the defendants. After these had occurred, they were removed for non-payment of rent.

A motion to dismiss the complaint was granted at the trial on several grounds. One was, that the question of the abuse of the license was a matter of construction for the court and not of fact for the jury. To this dismissal the plaintiff excepted.

Other facts are sufficiently stated in the opinion.

*C. Bainbridge Smith* for the appellant. In construing a written instrument, the court may look at all the surrounding circumstances and the pre-existing relations of the parties to

ascertain its meaning and their intent. (*Blossom* v. *Griffen*, 13 N. Y., 569; *French* v. *Carhart*, 1 id., 96; *Moore* v. *Meaham*, 10 id., 211; *Fish* v. *Hubbard*, 21 Wend., 663; *Steffins* v. *Collins*, 6 Bosw., 223, and cases cited.) There is an implied covenant in a lease that the premises shall be used for what they were originally leased. (*Mayor* v. *Mabie*, 13 N. Y., 151; *Kelsey* v. *Durkee*, 33 Barb., 410; *Lafarge* v. *Mansfield*, 31 id., 345, 348; *Douglass* v. *Wiggins*, 1 J. Ch., 435; *Beers* v. *St. John*, 16 Conn., 322; Taylor's L. & T., § 348; *Kidd* v. *Dennison*, 6 Barb., 9, 13.) Where a license is set up in answer to the acts complained of, the license must be coextensive with the acts committed. (*Colchester* v. *Roberts*, 4 M. & W., 769; *Cowling* v. *Higgins*, id., 245; *Fitch* v. *Fitch*, 2 Esp., 543; *Kirkham* v. *Sharp*, 1 Whart., 323; *Jackson* v. *Stacey*, Holt's N. P. C., 455; *Ballard* v. *Dyston*, 1 Taunt., 277; *Brunton* v. *Hall*, 1 G. & D., 207.) Defendants were not authorized by the lease to make the inside alterations they did. (Taylor's L. & T., §§ 355, 697, and cases cited; *Marquis of D.* v. *Lady Saudys*, 6 Ves., 107.) A landlord may sue his tenant for an injury committed by him before the expiration of the term. (*Schermierhorn* v. *Buell*, 4 Denio, 422; *Ray* v. *Ayres*, 5 Duer, 494; *White* v. *Wagner*, 4 H. & J., 373; *Tinsman* v. *B. D. R. R. Co.*, 1 Dutch., 255; *Beavers* v. *Trimmer*, id., 97; *Queen's College, Oxford*, v. *Hallett*, 14 East, 487; Taylor's L. & T. [6th ed.], § 688; *Smith* v. *Fett*, 50 Barb., 612; *Van Dusen* v. *Young*, 29 id., 9; 29 N. Y., 9.) An action of waste, under the statute, would lie against the defendants. (2 R. S., 334, § 1; 2 Rol., 814; *McGregor* v. *Brown*, 10 N. Y., 114; Taylor's L. & T., §§ 347, 348; 6 Law Lib., §§ 190, 349; Bac. Ab., Waste [C.]; *Sarles* v. *Sarles*, 3 Sandf. Ch., 601; 4 N. Y., 446; 18 id., 366; Co. Litt., 53; *Marquis of D.* v. *Lady Saudys*, 6 Ves., 107; *Jackson* v. *Andrew*, 18 J. R., 431, 434; *Provost* v. *Hallett*, 14 East, 489; 4 Kent's Com., 77, 78; Taylor's L. & T., § 688; 1 R. S., 750, § 8; *Van Deusen* v. *Young*, 29 Barb., 9, 15; 29 N. Y., 9.) The question whether there was an injury to the premises should have been submitted to the jury. (*Jackson* v. *Tibbetts*,

3 Wend., 341; *Young* v. *Spencer*, 10 B. & C., 145; *McCay* v. *Wait*, 51 Barb., 225; *Jackson* v. *Brownson*, 7 J. R., 227; *Doe* v. *Wilson*, 11 East, 56; *Doe* v. *Burlington*, 5 B. & Ad., 507; Smith L. & T., 194.)

*H. Morrison* for the respondents. Defendants were authorized by the lease to make the alterations made by them. *Winship* v. *Pitts*, 3 Paige, 262; 10 Henry 7, fol. 2, pl. 3; 1 Nev. & M., 6; *Doe* v. *Jones*, 4 B. & Ald., 126.) Plaintiff was estopped by the terms of the lease from bringing this action before the expiration of the defendants' term. (10 Henry 7, fol. 2, pl. 3; Platt on Cov., 289; 1 Wash. on R. P. [3d ed.], 132, 133; *Schieffelin* v. *Carpenter*, 15 Wend., 400.)

DWIGHT, C. Had there been no license given to the defendants to do the acts of which the plaintiff complains, the injuries done to the property would have been, apparently, acts of waste, for which the plaintiff could, by the rules of the common law, have brought an action on the case in the nature of waste. (2 R. S., 384; Taylor on Landlord and Tenant, § 348, and cases.)

The right which the tenant has is to make use of the property. The power of making an alteration does not arise out of a mere right of user; it is, therefore, incompatible with his interest for a tenant to make any alteration, unless he is justified by the express permission of his landlord. (Taylor, § 348.) HOLROYD, J., in *Farrant* v. *Thompson* (5 B. & Ald., 826) defines the extent of a lessee's rights. By a lease, the use, not the dominion of the property demised, is conferred. If a tenant exercises an act of ownership, he is no longer protected by his tenancy. The defendants claim that these rules do not apply to the act of taking down partitions, citing Year Book 10, Henry VII, folio 2, placita 3. The following expressions are quoted: "If there be partitions between certain chambers it is lawful for the termor to destroy them, and make a union of all the chambers." This proposition was overruled by a later decision in the same case. (Keilway, 37 *b*, note 10; *Doe* v. *Jones*, 4 B. & Ad., 126.)

No such right can be claimed from the mere relation of landlord and tenant. If it exist at all, it must depend on an agreement, and where that is sufficiently clear the proposition is indisputable. In the absence of an agreement, the effect of the acts must be submitted to a jury. (*Jackson* v. *Tibbetts*, 3 Wend., 341.) In this case the action was brought for cutting through a partition and inserting a door. If a lessee fling down a wall between a parlor and a chamber, by which he makes a parlor larger, it is waste, because it cannot be intended for the benefit of the lessor, nor is it in the power of the lessee to transpose the houses. (2 Roll. Abr., 815.) So, if he pull down a partition between chamber and chamber it is waste. (Id.) If a lessee even erect a partition he cannot break it down without being liable to an action. (*Cook's case*, Moore, 178.)

The defendants justify the commission of the acts of which the plaintiff complains, on the ground that the lease of which they are assignees provides, that the lessee shall have the right to make inside alterations to said premises, as he may think proper, provided that the same do not injure the premises. At first thought, it might seem that this clause was without significance, and was but little more than a provision that a person might commit waste if it did not amount to waste. Such seems to have been the opinion of Lord HARDWICKE in a somewhat similar case. (*Garth* v. *Cotton*, 1 Vesey, Sr., 524, 546; 1 Dick., 183.) In that case the language was, that the tenant's estate was without "impeachment of waste," voluntary waste excepted. The court substantially held, that the exception was inconsistent with the provision in the tenant's favor, and that it practically nullified it, and he could commit no waste. The better construction would seem to be that enforced in *Vincent* v. *Spicer* (22 Beav., 380). The language in that case was, that the tenant's estate was without impeachment of waste, save and except spoil and destruction, voluntary or permissive waste, etc. The court declining to follow the rule in *Garth* v. *Cotton*, and deciding that some sensible signification, if possible, should be given to all the words, construed

them as meaning that the tenant must act with due regard to his present interest, and to the permanent advantage of the estate, as a prudent owner would act in a due course of management.

*Hasty* v. *Wheeler* (12 Maine [3 Fairfield], 434) is very near to the present case. There was a covenant in the lease not to commit waste, and yet the lessee was to have the right to "repair, alter and improve the premises in such a manner as should be for his use and benefit." The court held that, in construing both covenants together, the lessee might make such improvements as would not injure the premises, though they might be technically waste.

*Doe* v. *Jones* (4 Barn. & Ad., 126) proceeded on the same principle, though the license in that case was much more unqualified. There was simply a covenant, on the part of the lessee, to repair, and, at the same time, a license to him to make improvements and additions. The court held, that the covenant to repair was the ordinary covenant "against wear and tear;" and that, accordingly, the license was so far unqualified as to authorize the act of stopping up a doorway, and making a new one in an internal partition — an act which, it was conceded, would have been waste without the special authorization.

On these authorities, as well as upon principle, it must be held that the clause in the lease in question confers upon the lessee more power to make alterations than he would have had if it had not been inserted : it may be supposed to allow acts which, in point of law, and technically are waste, and yet are not accompanied by actual injury to the premises. It plainly gives only a qualified right to make alterations. The lessee's will is limited by the fact that the alterations are to cause no injury to the premises. A further reasonable limitation is, that the acts of alteration are not to be wanton or capricious, but must be made with a purpose to facilitate the transaction of the lessee's business. The terms of the lease show that it was expected that some kind of business would be carried on in the premises which might require the applica-

tion of steam-power. The clause concerning the right to make alterations must be supposed to have been inserted with the view of enabling the lessee to adapt the premises to such business as might happen to be carried on there.

The alterations which were made by the lessees were quite extensive in their character. They principally consisted in the taking down of partitions and in the removal of a large number of chandeliers, and in the destruction of plumbing work. These were all a part of the "premises." Whether the acts which the defendants did really caused injury, or whether they were reasonably required for the enjoyment of the premises according to the business which they carried on, cannot be determined as a question of law, but is rather a matter of fact. It depends upon the character of the building, its position upon a principal street in the city of New York, the nature and requirements of the business of the defendants as carried on in that city, or of other business to which the building might be adapted, the extent of the alterations and their effect upon the property, whether permanent or transitory. The circumstances to be taken into account are so various that the case is one which is peculiarly fit for the consideration of a jury. The meaning of a written instrument, free from ambiguity, is undoubtedly a question of law; the action of parties under it may, as in the present case, raise a question of fact. It is held that the question, whether an alleged act is a permanent injury to the estate, is a question of fact for a jury. (*McCay* v. *Wait*, 51 Barb., 225; *Jackson* v. *Brownson*, 7 J. R., 233.) In the same way it is a question for the jury whether trees have been cut down in good faith for the purpose of repairs. (*Doe* v. *Wilson*, 11 East, 56; *Young* v. *Spencer*, 10 B. & C., 145.) In *Young* v. *Spencer* an action was brought by a landlord against a tenant for opening a new door in a wall. The jury found, as a fact, that the house was in no respect weakened by it, whereupon the judge directed a verdict with nominal damages. The appellate court held that, as the reversionary interest of the landlord might be injured, viz., by impairment

of the evidence of title, though the house itself was not, the question of such injury should be left as a fact to the jury. The court said that it could not undertake to say, as a matter of law, whether an injury had been done to the reversionary interest or not. So in *Hasty* v. *Wheeler* (*supra*), where the same questions were involved as in the case at bar, the court left it to the jury to say whether the improvements caused permanent injury or not. The case of *Young* v. *Spencer* (*supra*) is considered in *Baxter* v. *Taylor* (1 Nev. & Man., 11), and held to be good law in the case of landlord and tenant, though it would not necessarily be applied to an action by the reversioner against a stranger. The remark of EDWARDS, J., in *McGregor* v. *Brown* (10 N. Y., 114), that it was not to be left to a jury to determine whether the act complained of in that case amounted to waste, is to be understood, from the context, as meaning that certain acts are so clearly injurious to the freehold that the question whether they cause injury is one of law. This remark is not at all inconsistent with the proposition, that where the injury depends on a variety of circumstances it is matter of fact. *McGregor* v. *Brown* did not turn upon this point, but upon errors in the admission of evidence.

A similar rule prevails in the courts of equity. In *Morris* v. *Morris* (4 Lond. Jur. [N. S.], 964) equitable waste was made to depend on the special circumstances of the case, and was held to be a fit question for a jury in *Ex parte Hastings* (L. R. [10 Eq.], 465). So in *Turner* v. *Wright* (2 De Gex, F. & J., 234), equitable waste was defined to be that which a prudent man would not do in the management of his own affairs. This definition must, in many cases, leave the question of reasonable prudence open to be considered as a matter of fact. (*Poler* v. *N. Y. Central R. R.*, 16 N. Y., 476; *Harris* v. *Northern Indiana R. Co.*, 20 id., 232; *Conger* v. *Hudson R. R. R.*, 6 Duer, 375.)

It is, however, claimed by the defendants, and it was so held by the court below, that the present action was prematurely brought. This construction is inadmissible, provided that the

alteration did in fact injure the premises. The most that can be urged for the defendants is, that their right resembled the old clause in leases, " without impeachment of waste ; " though qualified by the provision that the premises must not be injured. This clause has always been carefully watched by the courts, and whenever the tenant has gone beyond the powers conceded by the lease, he has either been restrained by injunction or compelled at once to make satisfaction or to restore the premises to the condition in which he found them. There has been no case in which the landlord was required to wait until the end of the lease to see whether the premises might be restored by the tenant to their original condition. If the waste committed went beyond the license an immediate wrong was done, which was at once the subject of redress in a court either of law or of equity. Of course, the bringing of an action which was to ascertain whether damage had been done beyond the license given could not be premature.

Some of the authorities establishing this point will now be referred to.

In *Packington* v. *Packington* (3 Atkyns, 215) a suit was commenced in equity to restrain a tenant for life, without impeachment of waste, from cutting timber which was not of proper growth to be felled. An injunction was granted. Here the sole ground of action was whether the tenant complied with the restrictions in the lease.

In *Rolt* v. *Lord Somerville* (2 Ab. Eq., 759) a tenant for life, without impeachment of waste, pulled down several houses and outbuildings and sold them, took up lead pipes and cut down ornamental trees. A suit was commenced to compel the tenant to put the property in the same condition as it was before as to the houses and lead pipes. A demurrer to the relief prayed for was overruled.

The same result was reached in *Aston* v. *Aston* (1 Vesey, Sr., 264), where there was a demand both for an injunction and for satisfaction for injuries already done. Other cases to

the same effect are *Strathmore* v. *Bowes* (2 Bro. Ch., 88); *Piers* v. *Piers* (1 Ves., Sr., 521; Dickens, 188).

It is well settled that a tenant for life, without impeachment of waste, is, notwithstanding, obliged to keep tenants' houses in repair, and is not allowed to suffer them to run to ruin. (*Parteriche* v. *Powlet*, 2 Atkyns, 383.)

In *Marker* v. *Marker* (4 Eng. Law and Equity, 95) the tenant was required to restore the premises to their original condition.

The cases in which partial powers to commit waste have been granted are still more closely analogous. In *Hewit* v. *Hewit* (Ambler, 508) lands were devised to a person for life, with power to cut down such trees as four persons named in the will should allow, in writing. It was held, that notwithstanding the four persons named were dead, the court would preserve the check on the tenant by directing a master to see what trees were fit to be cut down. (See, also, *Chamberlyne* v. *Dummer*, 1 Bro. Ch., 166; 3 id., 549.) These restrictions are as operative against tenants for years as for life. (1 Washburn on Real Property, 120, § 51; *Pyne* v. *Don*, 1 Term, 56; *Cholmeley* v. *Paxton*, 3 Bing., 207; Tudor's Cases, 67.)

The result of the cases is, that the action for injury will lie during the continuance of the tenancy. Any other rule would be subversive of public justice, as the tenant might be insolvent at the end of the lease and unable to restore the premises to their original condition.

It is not argued in the present discussion that the license in the case at bar is an equivalent to the clause "without impeachment of waste," either in its absolute or qualified form. One result of that clause is to give the tenant the property, timber, minerals, etc., which he lawfully severs from the land, so that the owner, for a transgression of the authority, may be driven to an action in a court of equity. (*Bowles' case*, 11 Co., 79; *Kane* v. *Vandenburgh*, 1 J. Ch., 11, 12; *Kidd* v. *Dennison*, 6 Barb., 10, 15.) In the case at bar it would be unreasonable to

hold that the right to make alterations conferred upon the
tenant the ownership of the substances severed. The cases
already cited on the subject of " equitable waste " are only
mentioned for the purpose of showing that the appropriate
action for transgression of a limited authority to commit
waste is not premature because it is brought during the con-
tinuance of the tenancy. Even when the tenant is unim-
peachable for waste, if he exceeds his authority trover will
lie for the articles severed from the estate. (*Lushington* v.
*Boldero*, 15 Beav., 1, and cases cited in note to page 10 ;
*Wellesley* v. *Wellesley*, 6 Sim., 497.)

The real inquiry in all cases is, whether there is damage
done which injures the reversion. (*Jackson* v. *Pesked*, 1
M. & S., 234 ; *McCullough* v. *Irvine's Exrs.*, 13 Penn. St.,
438.) This injury may be immediate, though the enjoyment
of the reversion is postponed. The value of the property
may be so much diminished that it will not bring the price
in market that it would previously have commanded. This
is a sufficient injury. (*Jesser* v. *Gifford*, 4 Burrow, 2141.)
Good faith on the part of the tenant is no defence where the
act, on general principles of law, amounts to waste. (*Clark*
v. *Holden*, 7 Gray, 8.)

It is, in general, no justification for an act of waste that a
party will, at some future time, put the premises in the
same condition as they were when the lease was made.
The question is, whether the tenant, at the time the wrong-
ful act was done, caused an injury which then affected
the plaintiff as to his reversion. How can it be known,
as matter of law, that a tenant will retrace his steps and
repair an injury which he has deliberately caused ? The
landlord has a right to a continuance of the state of
things as they existed when the injury was done. The
tenant has no right to exercise an act of ownership.
(*Clark* v. *Holden*, *supra*.) The injury in the present case
appears to have been serious. It was estimated by witnesses
at $8,000. It was held in *Town of Hamden* v. *Rice* (24
Conn., 350), where land was damaged by cutting forest trees

to the extent of $250, that this was a sufficiently permanent injury to justify an action on the case in the nature of waste, although the sum was to be apportioned between the tenant and the landlord.

*Schieffelin* v. *Carpenter* (15 Wend., 400) is not inconsistent with these views. It was there held, that if there was a covenant to *keep* premises in repair and it was broken an action would lie during the continuance of the tenancy. It was further said as a *dictum* that it would be otherwise if the covenant were to *leave* premises in repair. In this case it was thought that no action would lie until the tenancy had expired. It is unnecessary to consider whether this distinction is sound since the present action is not brought for a breach of the covenant to repair but for affirmative acts of waste to which the license given in the lease did not extend. If a tenant should agree to leave a house in repair and should willfully tear it down, it would not be necessary to proceed on the covenant but he might bring his action of waste at will and forfeit the tenancy, or he might sue for damages.

*Winship* v. *Pitts* (3 Paige, 259) should also be noticed. That was a case of an erection of a new building upon vacant land, in respect to which the court held that the common-law doctrine of waste was relaxed in this country. The case has no application to a state of facts where the common-law doctrine has not been relaxed. There can be no pretense of any relaxation in the case of tearing down houses or taking down inner walls or partitions. It would be difficult to set any limits to such acts by judicial decision. Where such changes are desired they should be left to the agreement of the parties. It may be added that the chancellor, in *Winship* v. *Pitts*, was careful to limit the modification of the common-law rule by requiring that the new building should be erected without destroying or materially injuring buildings or other improvements existing on the land, and that the materials of the new building should be of sufficient value to pay the expenses of removal. The case must be regarded as turning on its special

facts and not as enunciating any general rule in the law of waste.

On the whole, the judge at the trial erred in not submitting the case to the jury, and for this error the judgment should be reversed.

If, however, I am wrong in this view and the question as to the injury is matter of law, the result is the same. There has been shown by the acts of the defendants such an abuse of the license granted to make alterations as would, in my judgment, entitle the plaintiff to recover, and the motion to dismiss the complaint should have been denied.

On either view of the case the judgment is erroneous and should be reversed.

For reversal, Dwight, Earl and Reynolds, CC.

For affirmance, Lott, Ch. C., and Gray, C

Judgment reversed.