# CHARLESTON.

S. SHEIN *v.* NORFOLK & WESTERN RAILWAY COMPANY *et al.*

(No. 6616)

Submitted February 11, 1930.  Decided February 18, 1930.

*J. B. Straton, Wade H. Bronson* and *Harry Scherr,* for plaintiff in error.

*F. M. Rivinus, Holt & Holt* and *Goodykoontz & Slaven,* for defendants in error.

HATCHER, JUDGE:

S. Shein, plaintiff, was the surface owner of a large tract of land (between 120 and 146 acres) near the city of Williamson, Mingo County. The tract was intersected by the main line of the defendant, Norfolk & Western Railway Company, and

by the public highway. In 1925, the plaintiff platted into town lots a portion of his land lying between the highway and the right of way. The defendant about that time undertook to enlarge its railroad yards, and as ancillary to that work leased from plaintiff for a term of two years at an annual rental of $1,500.00 a strip comprising thirty-two lots. The lease was prepared by the attorney for the defendant and provided:

"3. The premises demised to be used by the lessee, his contractors or assigns for any legitimate purposes, other than to build houses which is forbidden, but the lessee shall specially have the use of the demised premises for use in getting and transporting material including soil and rock excavated or removed in connection with railway construction and improvements; to build tramroads, structures and viaducts and to do all such other further matters and things as the lessee may deem necessary or essential to its objects and purposes.

4. At or before the expiration of this lease the lessee, its contractors or assigns, shall be privileged to remove from the demised premises, tracks, ties, tools and other equipment used in the work thereon."

In order to secure a proper elevation for a temporary railroad, the defendant constructed on the leased property a fill approximately fifteen feet high containing some thirty-five thousand cubic yards of earth and rock, which is irregular in width and covers the greater part of the leased land. At the expiration of the two-year term, the defendant removed its railroads and some of the ties from the premises. Plaintiff contends that twenty-nine of his lots were practically destroyed as building lots by reason of the fill and that a number of fruit trees were destroyed, to his damage of $37,000.00. It is not disputed that a few fruit trees were cut down or were covered by the fill, though not as many as plaintiff claims.

On January 8, 1926, the defendant purchased from the plaintiff 15.3 acres of land at the price of $22,500.00 to be used for the expressed purpose of enlarging and improving

its railroad facilities. By reason of an excavation made by defendant on the purchased land several slides occurred on plaintiff's hill land contiguous to the highway which divided the hill land from the excavation. Plaintiff alleges that the excavation was so negligently made as to cause the slides on his property. There is no testimony supporting that allegation, and plaintiff does not insist here on his right of recovery therefor.

At the termination of the evidence before the jury, the defendants moved the court to strike out the evidence of plaintiff and direct a verdict in their behalf, which was done. Motion for a new trial having been denied, plaintiff prosecutes this writ of error.

The defendant contends that the $3,000.00 paid for the use of the property was in the nature of compensation rather than rental. In support of this contention it points to the fact that plaintiff's land is assessed on the land books at $20.00 an acre. Since there is no ambiguity in the contract as to the purpose of the payment, calling for extraneous evidence, the land book assessment has no part in the case. The very nature of the contract forbids the construction for which defendant contends. The instrument was prepared by defendant's own attorney, who is highly skilled in his profession and in the use of legal terms. It embodies no suggestion that the payment is compensation. On the contrary, it expressly declares that the $1,500.00 payment is "an annual rental". So, under all ordinary rules of construction, *rental* it is.

The defendant places some reliance on the fact that while the lease gives it permission to remove the track and ties, there is no requirement that it remove the roadbed. This contention applies in so far only as the dimensions of the roadbed are reasonably within the contemplation of the lease.

The defendant further contends that the embankment became the property of the plaintiff and therefore it had no right to remove it from the land, citing *Charles* v. *R. R. Co.*, (Va.) 129 S. E. 384, 387. That case was not a suit against a tenant for damages by the landlord and is entirely different from this one. It there appeared that a graded roadbed con-

structed by a tenant over the property of the land owner increased the value of land which was sought to be condemned by a railroad company, and the land owner was permitted to have the increased value by reason thereof assessed against the company. It does not follow that a tenant, no matter the enormity of his injury to the land, can escape damages therefor merely by leaving on the property a mass of material which is of no value whatsoever to the landlord. In the *Charles* case the roadbed was an improvement; here it is alleged to be an intolerable burden.

Conceding that, under the broad leave conferred on the defendant to build tramroads, structures and "do all such other further matters and things as the lessee may deem necessary or essential to its objects and purposes", the defendant had the right to construct a fill on plaintiff's land, the important question remains, does it have the right to leave a fill of the dimensions and character of the one in question without responding in damages? It is elementary law that in the absence of an express covenant as to the condition of premises at the termination of a lease, the tenant should leave the premises substantially in the same condition as when he entered except for such changes as are reasonably necessary from the use to which the property is to be put. 36 C. J., p. 198, sec. 861. It is equally well settled that the law implies no obligation upon a tenant to restore land to its original condition, where physical changes have been expressly authorized by the lease. 2 Tiffany Real Prop. (2nd Ed.) sec. 349(g). Reasonable alterations of property leased for industrial purposes necessarily cause far greater damage thereto than reasonable use under an ordinary farming or domestic lease. Consequently the use under this lease is not comparable with that under the ordinary lease. The use here must be considered with reference solely to the provisions of the lease. The extensive license granted thereby undoubtedly contemplated radical alterations in the property, and if the license was not abused the defendant is not responsible for damages occasioned by its exercise. "In the absence of special covenants to the contrary, damage to leased premises which ensues from a reasonable use by the lessee is

not actionable." *Haas* v. *Brown*, 47 N. Y. Supp. 606. The right to alter radically, however, does not imply the right to destroy. Testimony is presented tending to show that the embankment has rendered the plaintiff's property valueless. There is also evidence tending materially to qualify that estimate. Whether the construction was excessive or unskillfully made under the terms of the lease should have been submitted to the jury with proper instructions. "The question as to reasonable use of the (leased) premises was one of fact to be submitted to the jury." *Haas* v. *Brown, supra,* p. 609. *Agate* v. *Lowenstein*, 57 N. Y. 604, 610.

The judgment of the circuit court is accordingly reversed and a new trial awarded the plaintiff.

*Reversed; new trial awarded.*