ESTATE PROPERTY CORPORATION, Plaintiff, *v.* HUDSON COAL COMPANY, Defendant.

Supreme Court, New York County, April 7, 1931.

*Platt, Field & Taylor* [*Eli J. Blair* of counsel], for the plaintiff.

*H. T. Newcomb* [*Samuel Seabury* of counsel], for the defendant.

UNTERMYER, J.  On November 17, 1898, Frances Hackley, the owner of a tract of coal land in Pennsylvania, leased the exclusive right to mine thereon for coal to the Dolph Coal Company, Ltd. By that lease the tenant agreed, among other things, to construct such improvements as might be necessary for the proper working of the mine.  The lease further provided that " at the expiration of said term the said lessee shall and will leave upon the premises all buildings, breakers, railroads, fixtures or improvements that may be erected thereon in reasonably good repair " and that all such improvements should " become and remain absolutely the property of said lessor, her heirs or assigns, on the expiration, forfeiture or other termination of said lease."

On July 3, 1916, the Dolph Coal Company assigned its lease to the defendant.  While in possession of the premises, and shortly before July, 1920, the defendant removed a substantial quantity of steel rails, which had been laid by its predecessor, the Dolph Coal Company, for the transportation of coal in connection with the working of the mines.  Thereafter, on July 8, 1920, the defendant assigned all its rights under the lease to the Humbert Coal Company, which since then has been in possession of the Hackley tract, operating the mines under the lease and paying the stipulated rents or royalties.  In connection with its operation of the mines the Humbert Coal Company appears to have relaid upon the Hackley tract at least as much rail as the defendant had removed.

In 1919 the plaintiff acquired and is now the owner of the premises.  It was, therefore, the owner when, in 1920, the defendant, then in possession by assignment of the lease, removed the rail.  Although there is no privity of contract between the parties here, there was such privity of estate at the time of the removal of the property as would entitle the plaintiff to maintain this suit.  (*Mann* v. *Munch Brewery*, 225 N. Y. 189, and cases there cited.)

In 1926 the plaintiff instituted this action to recover, among other things, for the value of the rail which had been removed by the defendant in 1920 and the removal of which, it is contended, constituted a breach of the covenants of the lease.  Among other affirmative defenses the defendant set up the six-year Statute of Limitations applicable to actions for waste (Civ. Prac. Act, § 48), and, furthermore, that the cause of action was not brought within the period limited by the laws of the State of Pennsylvania. At the trial the plaintiff moved to dismiss this defense on the

ground that the cause of action arose upon a sealed instrument (Civ. Prac. Act, § 47), and that statutes limiting the time within which actions for waste might be instituted were not applicable. The defendant, resisting this motion, contended in substance that the complaint might be construed either as asserting a cause of action for waste or for the breach of a covenant of the lease and that this affirmative defense should be allowed to stand unless the plaintiff elected to proceed exclusively on the theory of breach of covenant. The plaintiff thereupon elected to proceed on the alleged breach of covenant and the court accordingly, without objection by the defendant, dismissed so much of the answer as set up the Statute of Limitations as a defense.

It is important to observe that the lease has not expired by forfeiture or other termination. The Humbert Coal Company, the defendant's assignee, is now in possession of the premises. It is paying, and the plaintiff concededly is accepting under the lease, the rents or royalties required to be paid.

It is manifest, therefore, that this action is not for waste. Manifestly, also, it cannot be maintained on the theory that the term of the lease has expired and that by reason thereof the fixtures in question were at the time of removal, or are now, the property of the plaintiff. If the plaintiff can succeed at all, it can only be on the theory that although the lease has not expired the removal of the rail during the term constituted a breach of the covenant requiring the tenant " at the expiration, forfeiture or other termination of said term * * * to leave upon the premises " all the improvements thereon, which should then " become " the property of the lessor.

At the conclusion of the plaintiff's case and again at the end of the entire case the defendant moved to dismiss the complaint. The court reserved decision on these motions and, without objection by either party, the case was submitted to the jury with the motion *sub judice*. The plaintiff now contends that, the jury having rendered a verdict for the plaintiff for the value of the rail removed, the court no longer has power to grant the motion to dismiss. The rule is to the contrary. Both parties having acquiesced in the procedure followed at the trial, the motion to dismiss survived the verdict. (*Bail* v. *N. Y., N. H. & H. R. R. Co.*, 201 N. Y. 355; *Fitzgerald* v. *Colt-Stewart Motor Co.*, 231 App. Div. 176.) This practice, moreover, is justified by practical consideration. It operates to the detriment of neither party and facilitates the final disposition of the litigation by producing a record on which the action of the trial court dismissing the complaint may be affirmed or the verdict of the jury reinstated by an appellate court.

The question thus presented is whether the plaintiff can maintain an action for damages before the expiration of the lease for the breach of the covenant, because, if it can, it will receive the benefit of a verdict for the value of the rail removed by the defendant while retaining the rail substituted therefor by the defendant's assignee.

I am of the opinion that the action cannot be maintained until the expiration of the term. The equipment removed from the premises by the defendant was not the property of the plaintiff and would not be its property until the term expired. The complaint, it is true, alleges otherwise, but the undisputed evidence discloses that the track was laid either by the defendant or by the Dolph Coal Company, the defendant's assignor. Such tracks, used in connection with a mining enterprise of such a character as this, constituted trade fixtures (*Northern C. R. Co.* v. *Canton Co.*, 30 Md. 347; see note, 21 A. L. R. 1089), which, in the absence of special agreement, the lessee would be entitled to remove before the expiration of the term. (*Andrews* v. *D. B. Co.*, 132 N. Y. 348; *Massachusetts National Bank* v. *Shinn*, 18 App. Div. 276; affd., 163 N. Y. 360; *Debobes* v. *Butterly*, 210 App. Div. 50.) Here on account of the express provision of the lease the tenant is required to relinquish all such fixtures at the expiration of the term. But the term has not expired and it cannot be said that a violation of this covenant has occurred, for the defendant may replace all the property which has been removed or, as has actually occurred, its successor might do so.

The language of the lease is significant. The tenant did not covenant that these fixtures should " become " the property of the landlord upon annexation to the land, but at the " termination of said lease." It did not covenant to keep the fixtures on the premises, but only " to leave " them there, also " at the expiration of said term." Until then the fixtures remained the property of the tenant and the tenant reserved the right to move or to remove them provided only it restored them at the end of the term in fulfilment of its covenant to leave them there. The form of this covenant may have been occasioned by the manner in which such operations are conducted. As each section of the mine is developed, rail is laid over which the coal to be mined is transported to its destination. To support the roof of the excavation it is the practice to leave large pillars of coal. These, also, are demolished, or as it is called " robbed," after the section had been depleted of its coal. The removal of these permits the roof of the tunnel eventually to collapse. As this work recedes from the interior of the mine, the rail no longer required is removed

for use elsewhere. In the light of the conditions under which such operations are conducted, I am not prepared to say that the lease denied the defendant the right to remove rail from the property, provided always at the expiration of the term it makes restitution of the rail so taken or of similar rail. To hold otherwise would accord the landlord a right of action, though the rail taken — the property of the tenant — were restored immediately. I do not think that such a conclusion is justified by the terms of the lease, drawn, it must be assumed, with relation to the business in which the tenant was engaged.

Since early times such a covenant has ordinarily been regarded as incapable of breach during the life of the lease. " And if houses be let to me for years, and I covenant to leave them in as good plight as I find them, and I throw down the houses; this is no breach of the covenant, for I may re-edify them, and therefore no action will lie upon this covenant until the end of the term." (Sheppard's Touchstone [1st Am. ed. 1808], vol. 1, p. 173.) Other commentators state the principle in similar terms. (Platt Covenants, p. 289; Platt Leases, vol. 2, p. 189; Wood Landl. & Ten. [2d ed.] p. 808.) Early decisions in this State have followed this rule. (*Schieffelin* v. *Carpenter*, 15 Wend. 400; *Demarest* v. *Willard*, 8 Cow. 206, 211.) The first of these, a case frequently cited in this connection, again draws the distinction between " a covenant to repair," the enforcement of which need not await the expiration of the term, and a covenant " to leave the premises " in repair, for breach of which an action will not lie until the end of the term. More recent decisions have applied the same rule to analogous situations. In *Knutsen* v. *Cinque* (113 App. Div. 677) a similar covenant was held to run with the land. The plaintiff-landlord could not, therefore, after conveyance of the premises, maintain an action for the value of horse stalls although destroyed by the tenant during the period of the plaintiff's ownership. " The action," said the court, " did not accrue until the expiration of the lease, for the plaintiff could have restored the stalls up to that time," and *Demarest* v. *Willard* (*supra*) was cited and approved. (See, also, *Thurber* v. *Losee*, 192 App. Div. 148.) In *Ayen* v. *Schmidt* (80 Misc. 670) the tenant had removed marble slabs from the premises, in violation, as the landlord claimed, of a similar covenant. The court held otherwise and by CRANE, J., said: " During that period he could have removed the marble slabs or made changes, provided he restored the premises to their original condition at the end of his term." To the same general effect are *Rosenbloom* v. *Finch* (37 Misc. 818) and *Haas* v. *Brown* (21 id. 434). Such, indeed, seems to be the universal rule. It prevails in Massachusetts

(*Hill* v. *Hayes*, 199 Mass. 411), in New Jersey (*Fox* v. *Lynch*, 71 N. J. Eq. 537) and in Pennsylvania (*Hoskinson* v. *Bradford*, 1 Pitts, 165). Exceptions even under such a covenant as this may, perhaps, exist where fixtures belonging to the tenant but unique in character have been destroyed, or where the tenant has otherwise repudiated his obligations within the principle expressed in *Hochster* v. *De la Tour* (2 El. & Bl. 678) and *Howard* v. *Daly* (61 N. Y. 362).

Cases where the action was for waste are not applicable here. Such was *Agate* v. *Lowenbein* (57 N. Y. 604). The tenant had demolished structures which were on the premises when he took possession. The cause of action was for injury to the property of the landlord. That injury was inflicted the instant the landlord's property was destroyed. It was in this connection that the court observed: " It is, in general, no justification for an act of waste that a party will, at some future time, put the premises in the same condition as they were when the lease was made." Here the property is not that of the landlord nor does he suffer injury until the tenant at the expiration of the lease fails " to leave " upon the premises the improvements which he has removed. This distinction is clearly indicated in *Agate* v. *Lowenbein* (*supra*, 615), where the court refers to *Schieffelin* v. *Carpenter* (*supra*) as " not inconsistent with these views." It expressly left open the question which is under consideration here.

Nor do I consider that the defendant is concluded on this motion by any previous decision in this case. A motion made before trial to dismiss the complaint was, in effect, denied (*Estate Property Corporation* v. *Hudson Coal Company*, 132 Misc. 590; affd., 225 App. Div. 798). A subsequent motion by the defendant to examine the plaintiff before trial with respect to an affirmative defense, which alleged that the lease had not expired, was also denied on the ground that it was insufficient in law (*Estate Property Corporation* v. *Hudson Coal Company*, 229 App. Div. 717). The complaint, however, alleges that the defendant removed fixtures " all of which was the property of the plaintiff as provided in said lease," and the lease also not only refers to improvements to be erected by the tenant, but to " buildings and improvements now erected " on the premises. Upon the complaint, therefore, the conclusion was inevitable that the property removed was equipment of the landlord on the premises at the commencement of the term; that the action was for waste thereof and that the rule expressed in *Agate* v. *Lowenbein* (*supra*) was applicable. Indeed, that was the authority principally relied on in the decision of that motion (*Estate Property Corporation* v. *Hudson Coal Company*, 132 Misc. 590, 593, 594). The same observations apply to the disposition of the

motion to examine the plaintiff before trial to establish the allegations of the affirmative defense. If, as it was alleged in the complaint, the improvements removed by the defendant were the property of the landlord, then the allegations of the answer that the lease had not terminated would have constituted no defense to an action for waste. But here we are not concerned with allegations of pleadings but with proof establishing without dispute that the property removed was not the property of the plaintiff; that there has been no termination of the lease, coupled with the avowal of the plaintiff's counsel that the action is not for waste but for the breach of a covenant which, until the end of the term, is incapable of violation or complete fulfilment. The motion to dismiss the complaint made at the conclusion of the entire case, upon which decision was reserved, is granted. Settle order.