Joseph P. Sullivan, J.
Petitioner landlord brings this holdover proceeding to recover possession of the demised premises on the basis of an alleged breach of the lease in that respondent tenant by making alterations to the premises impaired the value thereof.
*187 The parties hereto, on March 14, 1963, entered into a lease which explicitly contemplated and provided for the tenant’s right to make alterations to the premises. Such right, however, was subject, inter alia, to the condition that: “ The alterations do not impair the value of the premises.”
Briefly stated, it is the landlord’s position that the tenant’s alteration was the cause of a substantially increased tax assessment against the subject premises for the tax year 1968/69 and that the consequent tax increase impaired the value of the premises. In support of this argument, the landlord cites the fact that his net return has been diminished because of the increased taxes flowing from the new assessment, as a consequence of which, he contends, the value of the subject premises has been reduced from $84,000 to $55,000.
The issue, therefore, is whether, as the landlord contends, the reduction in the landlord’s net income brought about by the increased tax assessment “ impair [s] the value of the premises ’ ’ within the meaning of the lease.
The tenant takes the position that the alteration, the cost of which was in the neighborhood of $208,000, has, if anything, increased the value of the premises by enhancing the value of the landlord’s reversionary interest. Among the improvements were a new furnace, air conditioning, hot water heater, a dropped ceiling and new toilet facilities. Pursuant to the terms of the lease, these improvements became part of the realty.
Although there is evidence that the landlord’s building is worth more now than it was before the alterations, the landlord maintains that net income is the only index of the value of a building such as the type involved here, i.e., a taxpayer (as it is known in real estate lexicon), which is being used by the tenant as a banking facility.
The evidence discloses that the lease was negotiated at arm’s length, both sides being represented by counsel, and without any representation as to the sums to be expended in the alterations contemplated; nor does the lease provide for a limit on the amount the tenant might expend on alterations.
While the few precedents dealing with the subject consider diminution of the landlord’s reversionary interest as the criterion of the reasonableness of the alteration (see Agate v. Lowenbein, 57 N. Y. 604; Bedlow v. New York Floating Dry Dock Co., 112 N. Y. 263, 281; Agate v. Morrison, 84 N. Y. 672; McDonald v. O’Hara, 117 Misc. 517), these cases, concededly, are concerned with injury to the premises rather than impairment of the value thereof. That being the case, the truest test to *188 ascertain whether the tenant impaired the value of the premises is to determine the intention of the parties on this subject by reference to the lease itself and to the history of the negotiations and events leading to its execution. Viewed in this light, the landlord’s position is untenable.
In 1962, while the tenant was in possession of a part of the subject premises under an earlier lease, the landlord proposed that he acquire one or more adjoining parcels to permit expansion of the premises occupied by the tenant and that a new lease be negotiated. At the time, the tenant had outgrown the existing space which it occupied and was actively engaged in exploring at least one alternate site for relocation. A number of proposals were presented by the landlord, each calling for the acquisition by him of one or more adjacent parcels. Ultimately, one of these proposals was adopted.
It was, of course, understood that the tenant planned to enlarge its existing facility by adding a safe-deposit area, an installment loan department and a drive-in bank window and parking facilities.
From the inception of negotiations, the landlord insisted upon a tax escalation clause as part of the lease, to which the tenant would not agree unless the clause contained a dollar ceiling. Finally, after protracted negotiations, the disagreement over the tax clause was compromised by an agreement that the landlord would pay a per annum base of $3,300 in taxes, with the tenant to pay taxes up to $1,500 over the $3,300 base. (Needless to say, the present real estate taxes for the subject premises are in excess of both of these layers of tax liability.)
Obviously, it was this tax clause which was intended by the parties to cover the situation of an increased tax assessment, a prospect both parties recognized as likely by virtue of the new lease and the additions and improvements it contemplated. It was to protect himself against this contingency that the landlord insisted upon a tax escalation clause. The clause as finally adopted was the result of extensive negotiation and the product of proposal and counterproposal. It represented, in all the circumstances, the ultimate that the landlord could realize for himself on this crucial and sensitive subject. Now that it develops in the light of .subsequent events that the landlord has made a bad bargain, he ought not to be permitted to avoid the lease by charging to the tenant, as an impairment of the value of the premises, the increased assessment, the very contingency he foresaw and against the consequences of which he sought to protect himself by the device of the tax clause,
*189 In this connection, the court rejects as being without factual basis, the landlord’s contention that the tax clause was intended to cover only the normal increase in the tax rate.
As the court views the situation, nothing that the tenant did here by way of alteration or otherwise impaired the value of the premises as an income producer. What does impair — and this is borne out by the testimony of the landlord’s expert — is the lease, the terms of which and specifically the rent reserved therein are insufficient to assure the net return sought by the landlord. This factor, however, is purely extrinsic to the inherent value of the premises.
At most, what the increased assessment does is to impair the value of the lease, which is not to say that the value of the premises is impaired. The lease clearly delineates a distinction between the value of the lease and the value of the premises.
One other factor warrants comment. To charge the tenant with responsibility for the increased assessment is to interpret the clause in question in a way that the tenant’s rights under the lease are subject to the actions of the tax assessor, a third party over whom it has no control. It strains credulity that the tenant would bind itself to such an agreement or that the parties intended such a result when they executed the lease.
Finally, and in any event, the landlord on the basis of this record has failed to sustain his burden of proof in establishing that the increased tax assessment was due to the alteration. At best, all that the landlord has succeeded in proving was that the increased assessment for 1968/69 was based on an equalization factor.
This determination, being on the merits, makes unnecessary any ruling on the tenant’s procedural objections to the right of the landlord to maintain this proceeding. The petition is dismissed.