(18 App. Div. 80.)

### HOLTHAUSEN et al. v. KELLS et al.

(Supreme Court, Appellate Division, Second Department.　May 11, 1897.)

1. RES JUDICATA—ACTIONS FOR SUCCESSIVE BREACHES OF CONTRACT.
   A judgment against a surety on a lease for monthly installments of rent due under the lease does not bar a subsequent action against the surety for installments of rent accruing after the first action was brought.

2. PRINCIPAL AND SURETY—DEATH OF SURETY BEFORE BREACH.
   The death of a party to an obligation who is liable thereon only as surety does not discharge his estate from liability for a breach occurring after his death, where he was the only surety and there was only one principal.

Appeal from Kings county court.

Action by Frederick Holthausen and others against William E. Kells and others, as executors of the will of Thomas Kells, deceased. From a judgment entered on an order overruling the answer as frivolous, defendants appeal.　Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Henry Cooper, for appellants.
Daniel Cameron, for respondents.

WILLARD BARTLETT, J.　The complaint alleges the letting of certain premises in Brooklyn by the plaintiffs to one Daniel F. Kerr, by a written instrument of lease, which is set out in full, and in which the lessee agree to pay the stipulated rent in equal monthly payments in advance.　It further alleges the contemporaneous execution by Thomas Kells, the defendants' testator, of an instrument at the foot of the lease, whereby he covenanted with the lessors and their legal representatives that, if the lessee should at any time default in the payment of the rent, he (the said Thomas Kells) would well and truly pay the said rent, or any arrears thereof that might remain due to the plaintiffs.　The complaint then proceeds to aver that the said Thomas Kells died on or about the 30th day of July, 1893; that the defendants have been appointed his executors, and have duly qualified as such; that the lessee has made default in the payment of the rent under the lease for a period of nine months from March to November, 1896, amounting to $287.50, which sum has been demanded of him, but not paid; and, finally, that this claim was duly presented to the defendant executors, who refused either to pay it or to refer it under the statute.　The answer contained no denial whatever, but simply alleged that on or about the 28th day of February, 1896, the plaintiffs brought an action against the same defendants, in the same court, upon the same lease, for the rent due in December, 1895, and in January and February, 1896, in which action the plaintiffs recovered a judgment for $110.84, which judgment the defendants claimed to be a former adjudication of the present action, and a bar to all subsequent actions.　The county court overruled this answer as frivolous, and ordered judgment for the plaintiffs for the relief demanded in the complaint.

The appellants insist that their plea was good, because the contract of the surety was entire, and one recovery upon it barred any further

recovery. They also contend that the plaintiffs' motion for judgment should have been denied, wholly irrespective of the legal sufficiency of the answer, because the complaint fails to state any cause of action. The first proposition is based upon the case of Waterbury v. Graham, 4 Sandf. 215. An examination of that case, however, shows that it affords no support to the position of the appellants. The agreement there under consideration was a contract to become a surety, not, as here, a contract to pay the rent from time to time as it became due, in case the lessee failed to pay it as stipulated in the lease. Under such an agreement as was made by the defendants' testator, he became liable to successive suits as successive breaches by the lessee should occur; and a recovery in one suit constituted no bar to a recovery in a subsequent action based upon a subsequent default. The default in the present case, in which the executors of the surety are the defendants, did not occur until after the surety had died; and, because the complaint shows this fact, the learned counsel for the appellants argues that it is demurrable on the ground, as stated in his brief, that "the death of a party to an obligation who is liable thereon only as surety for another party operates as an absolute discharge of the estate of such surety." We do not understand this to be the law, nor do the authorities cited to sustain the proposition furnish it any support. They relate to the effect of the death of one out of a number of sureties upon a joint obligation, and have no application to such a state of facts as is presented here. We have here to deal with the case of a single surety for a single principal. The death of an individual surety does not operate to revoke an engagement on his part in the nature of a continuing contract for a specified period of time; and, in the event of a default by his principal within that period, the estate of the surety is liable after his death. Where the consideration for a guaranty is given once for all, the guaranty does not cease upon the death of the guarantor. Lloyds v. Harper, 16 Ch. Div. 290. The case cited was that of a father who, on his son's admission to membership in the organization of underwriters known as "Lloyds," addressed a letter to the managing committee holding himself responsible for all his son's engagements as a member. The father died in 1876. The son failed two years later, and the suit was brought to charge the executors of the father with a debt which the son owed as a member of Lloyds at the time of his failure. The court of appeal held that the father's estate was liable for all the engagements which the son entered into with persons who effected policies of insurance with him; and Lord Justice James likened the case to that of a surety on a lease, saying that the consideration was given once for all, "just as in the case of granting a lease in which a third party guaranties the payment of the rent and the performance of the covenants," which is precisely what the deceased surety did here.

The rule which the respondents are entitled to invoke is well stated by Deady, J., of Oregon, in Hecht v. Weaver, 34 Fed. 111, where he says:

"On a careful examination of the authorities, I have concluded that whenever the undertaking of the surety is for a definite period, as for the conduct of an

officer during his term of office, or for the repayment of advances made to the principal in the bond until notice is given the obligee that the liability is terminated, the estate of the surety in the hands of his administrator is answerable for any default of the principal occurring after his death."

A number of American cases are cited in support of this conclusion, and of its correctness there can be no doubt.    Among these decisions, we may mention Green v. Young, 8 Greenl. 14; where it was held that the liability of a surety in a bond conditioned for the official good conduct of a deputy sheriff extended to defaults committed after the surety was dead.    The complaint in this case was good; the answer was manifestly frivolous; and the judgment was right.

Judgment affirmed, with costs.    All concur.