(34 App. Div. 103.)

HALL v. ERNEST OCHS.

(Supreme Court, Appellate Division, Second Department.   November 3, 1898.)

1. LEASE—GUARANTY—DEATH OF PRINCIPAL—DISCHARGE.
The death of a principal does not release his guarantor for performance of the conditions of a lease.

2. SAME—FAILURE TO PRESENT CLAIM TO PRINCIPAL'S ESTATE.
A guarantor of the payment of rent is not released by failure to present a claim therefor against the principal's estate.

3. SAME—CHANGES IN OBLIGATION.
A guarantor of performance of a lease with a covenant against assignments and subletting is not discharged by an assignment whereby its liability was reduced, and to which guarantor's president assented.

4. CORPORATIONS—PRESIDENT'S AUTHORITY.
A guaranty of payment of rent, made by the president of a corporation within the scope of his apparent authority, in the form of an individual undertaking, but intended as the act of the corporation, and so recognized by its directors, may be inferred to be the authorized act of the corporation.

5. SAME.
The execution of a guaranty by a brewing corporation of payment of rent of a saloon by the lessee thereof is not beyond the authority of the president of the corporation.

Appeal from trial term, Kings county.

Action by James B. Hall against Ernest Ochs, a corporation.   From a judgment for plaintiff, and an order denying a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles L. Pashley, for appellant.
Josiah T. Marean, for respondent.

WOODWARD, J. .  The plaintiff herein is the owner of certain premises used for a saloon, on Atlantic avenue, in the borough of Brooklyn, and the defendant is a domestic corporation engaged in the manufacture and sale of malt liquors, its corporate name being identical with that of its president.   In March, 1895, the plaintiff executed a lease in writing, whereby he demised unto one Patrick Casey the premises above mentioned, for a term of five years, beginning May 1, 1895, at an annual rental of $2,160 for the first two years and $2,400 for the last three years of said term, payable in equal monthly payments.   The lease contained a covenant against assignment and underletting, without the consent of the lessor, and attached to it was the written guaranty, reading, in part, as follows:

"In consideration of the letting of the premises, * * *, I, Ernest Ochs, of the city of Brooklyn, do hereby covenant and agree to and with the party of the first part, above named, and his legal representatives, that, if default shall at any time be made by the said Patrick Casey in the payment of the rent and performance of the covenants above contained on his part to be paid and performed, that I will well and truly pay the said rent, or any arrears thereof that may remain due unto the said party of the first part, and also all damages that may arise in consequence of the nonperformance of said covenants, or either of them, without requiring notice of any such de-

fault from the said party of the first part. Witness my hand and seal, this eighth day of April, in the year of our Lord one thousand eight hundred and ninety-five.             Ernest Ochs. [Seal.]
 "Witness: John Steil."

The seal was a wafer, and not the corporate seal of the defendant. The lease was twice assigned, notwithstanding the covenant against assignment,—First, two days after its execution, by "Patrick Casey to Ernest Ochs, individually"; and, second, on November 13, 1896, by Ernest Ochs, individually, to H. B. Scharmann & Sons. Patrick Casey occupied the premises and paid the rent until his death, in January, 1897. Then his son took possession, and Scharmann & Sons, the assignee, paid for him the rent stipulated in the lease up to June 1, 1897, when one Philip J. Reilly took possession under arrangement with Scharmann & Sons, and paid the rent for June and July to the plaintiff. After July the premises became vacant. Default was made in payment of the rent for August and September, and the present action was brought upon the above guaranty to recover the rent due for the said months. At the trial it was admitted by the defendant that its president, in signing the guaranty, intended to bind the corporation; and that this was the understanding of the parties, notwithstanding the individual character of the instrument, is clear. The jury found that the president of the defendant was authorized to sign the guaranty, and that there had been no release or surrender of the lease. They rendered a verdict for the plaintiff for the full amount of two months' rent, and from the judgment entered thereon, and from an order denying a motion for a new trial, the defendant appeals.

The appellant's first point is clearly untenable, and the cases cited by counsel furnish no support to his novel proposition that the surety was released by the death of the principal. This court, in Holthausen v. Kells, 18 App. Div. 80, 45 N. Y. Supp. 471, Mr. Justice Willard Bartlett delivering the opinion, held that in the case of a guaranty of a lease the consideration was given once for all, and that the guaranty did not cease upon the death of the guarantor. This case was affirmed, on the opinion below, by the court of appeals (154 N. Y. 776, 49 N. E. 1098), and the reasoning of it applies to the case at bar. Nor does a neglect to present the claim against the estate of the deceased principal release the surety. Sibley v. McAllaster, 8 N. H. 389; Villars v. Palmer, 67 Ill. 204.

The second point advanced by the appellant is that plaintiff's assent to the changes in occupation discharged the guarantor. As such assent must be considered to have been mutual, and as it resulted in a reduction of the guarantor's alleged liability by just so many months' rent as the new parties paid, it seems that the point is not well taken. The jury were justified in finding that there was no release. There was no surrender in writing, and none by operation of law. Even though third persons entered and paid rent to the landlord after the original lessee quit the premises, the original lease remained in force. Schieffelin v. Carpenter, 15 Wend. 400. With regard to the violation of the covenant against subletting, it is sufficient to say that the defendant, through its president, consented to

such subletting, and was clearly benefited thereby.　No ratification of the guaranty was needed if the latter was valid ab initio, and defendant consented to the changes. .

The appellant's counsel further contends that the execution of the guaranty was not authorized, and that the agency was not properly proved.　But the jury have found that the defendant's president acted within the scope of his apparent authority, and it is settled doctrine in America that the appointment of an agent may be inferred and implied from the adoption or recognition of his acts by the trustees and directors, or by the corporation.　Bank v. Dandridge, 12 Wheat. 64; Danforth v. Turnpike Road, 12 Johns. 227.　In the former case, Mr. Justice Story, at page 70, said:

> "If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed." .

In fact, the largest class of cases of agency is that which relates to trade affairs, where the agency is proved by inference, from the habit and course of dealing between the parties.　Juries have frequently been advised to infer the grant of authority from the course of conduct and dealing adopted by the principal.' 2 Greenl. Ev. (15th Ed.) § 65.　That a similar contract was not ultra vires was decided by this court in Holm v. Brewing Co., 21 App. Div. 204, 47 N. Y. Supp. 518.　To the same effect is Koehler & Co. v. Reinheimer, 26 App. Div. 1, 49 N. Y. Supp. 755.

The judgment should be affirmed.

Judgment and order affirmed, with costs.　All concur.